## BARNEY v. MILLER.

1. **Half Breed Tract:** DECREE. The title derived under the decree of partition of the Half Breed Tract is conclusive as to all those who were parties to it, and cannot be controverted by evidence of title to interests or shares acquired prior to it; but the rule is not applicable to conveyances, made prior to such decree, offered in evidence to establish facts essential to a correct ascertainment of the subject matter of a subsequent conveyance.

2. **Conveyance:** GENERAL AND PARTICULAR DESCRIPTION. Where a deed of conveyance contains a general description of the property sought to be conveyed, which is definite and certain within itself, and is followed also by a particular description, the latter will not restrict the grant made by the former; but when the general description is indefinite and uncertain, and reference must be had to the particular description to ascertain with

certainty the subject of the grant, the whole language will be taken together; and if, upon the whole instrument, there is sufficient to manifest with reasonable certainty the intention of the parties, it will suffice.

*Appeal from Lee District Court.*

MONDAY, JUNE 5.

ACTION to foreclose a mortgage given by the defendant to Charles Mason, to secure the payment of the purchase-money agreed to be paid for the mortgaged property — part of lot six in block four in the city of Keokuk. Mason conveyed the property to Miller by deed of general warranty, &c., on the same day the mortgage was executed. There were no notes given, but the mortgage itself was assigned to plaintiff by a separate instrument, before any breach.

The cause was tried by the second method, to a jury, who returned a verdict for the defendant. The plaintiff appeals, but does not bring up all the evidence, nor complain of the action of the jury; but rests his case upon certain legal propositions, erroneously determined, as he alleges, by the court below, and for the proper understanding of which it is necessary to make a further statement of facts, apparent upon the record as follows:

The lot in controversy is a part of what is well known in this State as the "Half Breed Tract." At the time of the sale and conveyance of the lot by Mason to Miller, Mason was not in possession, nor did he deliver possession then or at any time afterwards to Miller; but the lot was in the actual possession of another, who held the same adversely to the Mason title. Miller afterwards purchased this adverse title, and thus acquired possession of the property, which he still holds.

Prior to 1836, an association of persons, known in connection with the "Half Breed Tract" as the New York Company, having acquired certain undivided interests in

the Half Breed Tract, had the legal title to such interest conveyed to Joshua Aiken, Samuel Marsh, Wm. E. Lee, Edward C. Delevan and Isaac Galland, to be held by them as joint tenants in trust for the company. On the 22d day of October, 1836, these trustees executed a power of attorney, wherein they state that they have "constituted and appointed, and by these presents do constitute and appoint, Joshua Aiken and Robert E. Little, of Peoria, our true and lawful attorneys, for us and in our name, place and stead, to bargain, sell and convey *any lands owned by us as trustees and joint tenants*, situate in the territory of Wisconsin, between the Mississippi and the Des Moines river."

On the 14th day of June, 1837, Joshua Aiken, Samuel Marsh, Edward C. Delevan and Isaac Galland (without any addition as trustees or joint tenants, either in the body of the deed or to the signatures), by Joshua Aiken and Robert E. Little, their attorneys in fact, conveyed lot six, in block four, in Keokuk (the property in controversy), to Isaac Galland. Other persons also joined in this deed, the material language of which is as follows: — do hereby bargain, sell, enfeoff, confirm and convey, &c., all their right, interest and estate in, &c., to have and to hold the said lot of land, with all the rights, titles and appurtenances thereto belonging, &c., and that they will forever warrant all their said respective right, interest and estate, &c., against all persons whomsoever claiming or to claim the same.

On the 8th day of May, 1841, a decree of partition among the several owners of the Half Breed Tract was rendered by the District Court of Lee county, Iowa Territory, in which partition proceedings all the before mentioned persons and many others were parties. In the partition, pursuant to decree, the New York Company, by its trustees, Marsh, Lee and Delevan (being a majority

of the original and the then only acting trustees), drew the lot in controversy in their share.

On the 28th day of June, 1852, Marsh, Lee and Delevan, trustees, &c., sold and conveyed to Charles Mason " all and singular the right, title, interest, property and estate of the parties of the first part, of, in and to all of those lands *not heretofore sold and conveyed by them*, known as the " Half Breed Tract," or the Half Breed Sac and Fox Reservation, situated in the county of Lee and State of Iowa, and espe-cially all and singular the lots and parcels in said Half Breed Tract particularly described as follows, to wit: and then follows the description of several hundred tracts of land and town lots, and one or more lots in the same block *four* in Keokuk, but the lot in controversy is not named.

On the 17th day of December, 1856, Mason, claiming title under the last-named conveyance, sold and conveyed the lot in controversy to Miller by a deed of general war-ranty, in the form prescribed by the Code.

The adverse title purchased and held by Miller was derived from Galland under the deed before mentioned by the attorneys in fact to him of date June 14th, 1837, and by regular conveyances from him through various grantees down to Miller himself.

*H. Scott Howell* for the appellant.

*Rankin and McCrary* for the appellee.

COLE, J. — I. The plaintiff introduced the mortgage made

1. HALF BREED TRACT: decree. by defendant to Mason, and instrument of assignment thereof by Mason to plaintiff, and rested his case.

The defendant read in evidence a deposition showing the actual possession of the property in controversy to have been for many years in a grantee of the title adverse to Mason's, and then offered to read in evidence the power of

attorney made by Lee and others to Aiken and Little, and the deed made thereunder by the attorneys in fact to Isaac Galland. To the introduction of these instruments the plaintiff objected, because, 1st. It was an attempt to go behind and controvert the decree title; 2d. The deed to Galland was made by grantors as individuals, and not as trustees; 3d. The deed to Galland does not contain any general covenants of warranty; 4th. The grantors in that deed had not been shown to have had any title at its date, or subsequently to have acquired any; 5th. That deed did not impart title, nor convey the interest of the grantors as " trustees."

The defendant then offered in evidence the several conveyances constituting a claim of title from Isaac Galland to himself, to the introduction of which the plaintiff interposed the same objections as above stated; but the court overruled the objections, and admitted the evidence, to which the plaintiff duly excepted, and now assigns the same as error.

It is true, as .has been several times determined by this court, that the title derived under the decree of partition of the Half Breed Tract is conclusive as to all those who were parties to it, and cannot be controverted by evidence of title to interests or shares acquired prior to it. *Mason* v. *Messenger and May*, 17 Iowa, 261, and cases there cited. In this case we do not understand that the deed to Galland and the supporting power of attorney were offered for the purpose of controverting the validity or sufficiency of the decree title, but to show a substantive fact existing at the time of the conveyance by Marsh, Lee and Delevan, as trustees, to Mason, which might become essential to a correct ascertainment of the subject matter of that conveyance. 1 Greenl. on Ev., § 286. In this view the testimony was competent, and there was no error in admitting it. So, also, were the subsequent conveyances from Galland

through the various grantees down to Miller, properly admissible for the purpose of showing that Miller was in possession as the grantee of that title, and not as vendee of Mason.

II. The court instructed the jury, *inter alia*, that " if Mason had no title or possession, he conveyed nothing by his deed to defendant; defendant took nothing by it, and it would follow that the mortgage given for that which Mason did not have was without consideration, and ought not to be enforced.

2. CONVEY-
ANCE: gen-
eral and
particular
descrip-
tion.

The question as to whether Mason had title must depend upon the documentary evidence which has been introduced. This, so far as the question is concerned, consists of the records of: 1st. The deed from Marsh, Lee and Delevan and others to Isaac Galland, of June 14th, 1857, and the supporting power of attorney; 2d. Of the decree or judgment of partition of the Half Breed Tract; 3d. Of the deed of Marsh, Lee and Delevan to Charles Mason, of June 28th, 1852."

The court further instructed the jury that these documents failed to show title in Mason, and that they should return a verdict for defendant.

The plaintiff asked eighteen instructions, the first and seventeenth of which, in substance, that the decree of partition was the source or evidence of title to all lots and lands in the Half Breed Tract, and that the effect of the decree was to impart title to Marsh, Lee and Delevan, trustees, in the property in question, were given, and the others were refused.

The instructions asked by plaintiff, and refused, were based upon the theory that the general description in the deed from Marsh, Lee and Delevan to Mason, conveyed the property in controversy, although not enumerated in the special description, or that the lot in controversy was not within the exception of " not heretofore sold and con-

veyed by them," contained in the general description, because, 1st. The deed made by the attorneys in fact, Aiken and Little, did not pass any title, since it was not made for their principals *as trustees;* 2d. That if the deed did pass their interests as trustees, yet, since it only conveys and warrants the grantors' "right, interest and estate," it did not pass any after acquired interest or title. At least these are the essential principles upon which the plaintiff based his instructions and claims to recover. The other instructions are based upon assumed facts, not disclosed by the record.

Where a deed of conveyance contains a general description of the property conveyed, which is definite and certain in itself, and is followed by a particular description also, such particular description will not limit or restrict the grant which is clear and unambiguous by the general description. *Marshall* v. *McLean*, 3 G. Greene, 363; *Wright et al.* v. *Cochran*, 3 Id., 507; *Bott* v. *Burnell*, 11 Mass., 163; *Jackson* v. *Clark*, 7 Johns., 216; *Jackson* v. *Loomis*, 18 Id., 81; *S. C.*, 19 Id., 449; *Hathaway* v. *Power*, 6 Hill, 453; *Johnson* v. *Simpson*, 36 N. H., 91.

This is a rule of construction, and is, of course, limited to the cases which are within it. Where the general description is indefinite and uncertain, and reference to the particular description must be had, in order to ascertain with certainty the subject of the grant; in such cases, the rule does not apply. But, then, the whole language will be taken together, and though it may be ambiguous or even contradictory, if, upon the whole instrument, there is sufficient to manifest the intention of the parties with reasonable certainty, that will suffice. *Hathaway* v. *Power*, *supra;* 1 Phil. on Ev., 538; *Parkhurst* v. *Smith*, Willis' Rep., 332; *Moore* v. *Jackson*, 4 Wend., 58.

In this case, the general description in the deed from Marsh, Lee and Delevan to Mason, is "all and singular the right, title, interest, property and estate of the said parties

of the first part, in and to *all those lands not heretofore sold and conveyed by them*, known as the Half Breed Tract." What lands passed by this description? Certainly, they cannot be ascertained by the description itself. The general description, therefore, is not definite and certain, and hence this case is not within the general rule above stated. But the general description is followed by this particular one; especially all and singular the lots and parcels of land in said Half Breed Tract, particularly described as follows: setting out a large number of tracts of land and lots, but not the lot in controversy.

Looking at the deed alone, the most reasonable construction of it is, that the grantors have undertaken to render the general description definite and certain by the particular description. We do not want to be considered, however, as holding that the grantee could not, per possibility, have taken title to any other property than that contained in the particular description, even upon a clear showing that such property was not included within the exception contained in the general description.

The defendant does not rely on the construction of that deed alone, unaided by extrinsic facts. He shows that the particular property in controversy was theretofore sold by Marsh, Lee and Delevan, Mason's grantors, with others, to Isaac Galland; and by this fact makes it reasonably certain that this property was not embraced in the general description, even, contained in the deed to Mason, and was not intended to be granted to him by that conveyance.

It might be conceded, for the purposes of this case, as claimed by appellant's counsel (but which we do not decide), that the deed made by Aiken and Little, attorneys in fact, &c., did not pass any valid legal title because not made in the names of their principals *as trustees*, and that the covenant of warranty being limited to the "right, interest and estate," the deed would not pass an after acquired title

without in the least affecting the result. For, although the deed may not legally have bound them " as trustees," nor the covenant of warranty have estopped them from claiming the after acquired title, yet they may very justly be considered as having recognized its validity and the binding obligations of the covenant, by refusing or failing to convey the property to another.

It may not be improper, however, to notice that the power of attorney to Aiken and Little was made in the individual names and authority of the principals, constituting and appointing " our true and lawful attorneys, for us, in our names, place and stead, to bargain, sell and convey *any lands owned by us as trustees and joint tenants*, situate," &c. Under this power the attorneys did, in the *name* of their principals, *sell and convey lands owned by them as trustees and joint tenants.* Why did not this power of attorney and conveyance under it pass the title? If it did not pass the technical legal title, was it not such a defective execution of a power as would be corrected and enforced in a court of equity? If it was the latter even, a recognition and confirmation of it would bind the principals.

But we place our affirmance of the judgment upon the sole ground that, in point of fact, Mason never acquired any title to the property in controversy. That the deed from Marsh, Lee, Delevan and others, by their attorneys in fact, to Galland, the decree of partition and the deed from Marsh, Lee and Delevan, trustees, to Mason, when taken together, show no title in Mason. The court below, then, did not err in giving the instructions to the jury, and directing them to find for the defendant. And although some of the instructions asked by plaintiff and refused by the court may have embodied correct legal principles, yet, since the giving of them could not have affected the result, if there was error in their refusal, it was error without prejudice, and the judgment must be      Affirmed.