SALENTINE *v.* MUTUAL BENEFIT LIFE INS. Co. (Two Case .)

*(Circuit Court, E. D. Wisconsin. June, 1885.)*

1. LIFE INSURANCE—DEATH OF INSURED BY HIS OWN HAND.
A policy of life insurance provided that in case the insured should die by his own hand the policy should be void, except that in case he should die by his own hand while insane, the amount to be paid by the company should be the sum of the premiums actually paid thereon, with interest. *Held,* that it was competent for the company thus to contract, and thus to limit the extent of its liability upon the happening of the contingency named. *Held, also,* that there was no repugnancy between the different clauses in the policy declaratory of liability, and it appearing that the insured committed suicide when insane, the company was only liable for the amount of the premiums paid by the insured, with interest.

2. SAME—INSANITY—ELECTION TO REFUND PREMIUMS, OR PAY SUM INSURED.
It was stipulated in a certain other policy of life insurance that in case the insured should die by his own hand the policy should be void; but if the insured, at the time of taking his life was insane, the company would pay the sum insured, or refund the premiums actually received, with interest, according to its judgment of the equities of the case; which option was declared to be distinctly reserved by the company, and made part of the contract. *Held,* that it was competent for parties so to contract, and that the stipulation was valid. *Held, also,* that the right of the company to exercise the option reserved in the policy, could not be waived until it should be shown that the insured, at the time of taking his life, was insane, and that the company was not required to elect which sum it would pay within the time named in the policy for payment, —which was 60 days after notice and proof of death,—regardless of the actual time, when it was shown that the insured was insane when he committed the act of self-destruction.

3. SAME—NOTICE OF ELECTION.
Conceding that it was the duty of the company to give the plaintiff notice of its election within a reasonable time after notice and proof of his death, *held,* that notice of such election, given within little more than three months after notice and proof of death, and before suit commenced, was sufficient; that the option reserved was duly exercised, and that the company was liable only for the amount of the premiums paid on the policy, with interest.

On the tenth day of September, 1881, the defendant insurance company issued its policy of insurance, No. 105,844, by which it insured the life of Peter Salentine in the sum of $2,000, thereby agreeing to pay that sum to the plaintiff, the wife of the insured, within 90

days after due notice and satisfactory proof of the death of the said Peter Salentine. The policy contained, among other things, this provision:

"Provided always, and it is hereby declared to be the true intent and meaning of this policy, and the same is accepted by the assured upon these expressed conditions, namely,   *   *   *   in case the insured shall die by his own hand   *   *   *  'this policy shall be void, null, and of no effect; except that in case he shall die by his own hand while insane, the amount to be paid by the company on this policy shall be the amount of the premiums actually paid thereon, with interest."

On the twentieth day of September, 1883, the defendant company issued its certain other policy of insurance, No. 115,218, by which it insured the life of the said Peter Salentine in the further sum of $3,000, and thereby promised and agreed to pay said·sum to the plaintiff, Katherine Salentine, within 60 days after notice and proof of the death of the insured. This policy contained the following provision:

"That if the insured shall die by his own hand   *   *   *   this policy shall be void. If, however, it shall be shown that the insured, at the time of taking his life, was insane, the company will pay the sum insured, or refund the premiums actually received, with interest thereon, according to its judgment of the equities of the case. This option is distinctly reserved by the company, and is made a part of this contract."

These were suits upon the two policies of insurance mentioned, and the plaintiff sought to recover the full amount of the policies, with interest. As a defense to the suit founded on policy No. 105,844, the defendant alleged in·its answer—

"That the insured died by his own hand; that he purposely, willfully, and knowingly took his own life; that the defendant is informed and believes that it is claimed on the part of the said plaintiff that said Peter Salentine at the time he took his life was insane. Whether or not said insured then was insane, this defendant has no knowledge nor information sufficient to form a belief, but insists that if so, said plaintiff is entitled to recover only the premiums actually paid on account of said policy, with interest, and says that it is and always has been ready and willing, and has offered, prior to the commencement of this action, to repay such premiums and interest to the plaintiff."

In its answer to the plaintiff's complaint in the suit founded on policy No. 115,218, the defendant made substantially the same allegations as those contained in its answer before referred to, but alleged further—

"That the plaintiff, prior to the commencement of this action, through her agent and attorney, made a claim that said Peter Salentine was insane when he took his life, and that this defendant thereupon, in accordance with the terms of said policy, elected, according to its judgment of the equities of the case, to repay to the plaintiff the sum insured, with interest thereon, and notified said plaintiff thereof, and offered to pay the same to the plaintiff, but that the plaintiff refused to accept the same. And this company does now elect, and is ready and willing to repay to plaintiff the premium actually received, with interest thereon."

The two cases were consolidated and tried together; and it was stipulated at the trial that the jury might make its special finding of facts in the form of a special verdict, the court reserving its ruling upon the questions of law involved, with the understanding that, upon the determination of these questions, a general verdict might be entered in accordance with the legal conclusions reached by the court upon the facts so found by the jury. By the verdict of the jury the following facts were found: That the policies of insurance were respectively issued as alleged; that Peter Salentine took his own life on the sixth day of January, 1884; that he was at the time insane; that he was not morally responsible for the act, but understood and knew the physical consequences of the act; that notice and proof of death were duly given and furnished to the defendant within the time required by the policies; that the amount of the premiums paid by the deceased on policy No. 105,844, was $272.80, which included interest thereon to January 6, 1884; that the amount of the premiums paid on policy No. 115,218, including interest to the date last named, was $59.51; that all premiums on both policies had been paid at the time of the death of the insured, and that before the commencement of these suits, and on the fifth day of May, 1884, the defendant notified the plaintiff that it would only refund the premiums received by it from the deceased on policy No. 115,218. The jury further found that the defendant on the fourteenth day of March, 1884, notified its local agent at Milwaukee that it had concluded to repay the premiums paid, with interest, on the policies in suit, by letter of that date. Upon this finding of facts by the jury, and upon the construction of the policies contended for by the plaintiff, it was insisted by her counsel that she was entitled to recover the sum of $2,000 on policy No. 105,844 and the sum of $3,000 on policy No. 115,218. This contention was opposed by the claim of the defendant company that it was only liable upon either policy for the amount of the premiums paid thereon by the insured in his life-time, with interest.

*E. P. Smith, D. G. Rogers,* and *N. Pereles & Sons,* for plaintiff.

*Jenkins, Winkler & Smith,* for defendant.

DYER, J.   That the plaintiff is not entitled to recover upon policy No. 105,844 more than the amount of the premiums actually paid by the insured thereon, with interest, seems very clear. The rule of construction applicable to the policy is elementary; namely, that effect must be given to every part of the contract. The plaintiff's contention would reject the clause limiting the extent of liability in case of suicide while insane, as repugnant to previous clauses in the policy. But there is in fact no repugnancy or inconsistency between the different provisions of the contract in relation to liability. The contract provides that in case the insured shall die by his own hand the policy shall be void. By repeated adjudications of the courts, it has become settled law that the legal effect of this clause, standing alone, is that death by his own hand, when the insured was insane, would not relieve

the company from liability, but that the commission of the act of suicide when sane, would defeat a recovery on the policy. But in direct connection with this clause stands another, in the form of an exception or proviso, which declares a qualified liability of the company in case the insured should die by his own hand when insane. It was entirely competent for the company thus to contract, and to declare that in case of suicide when insane the company would be liable only for the amount of the premiums paid on the policy, with interest; and the policy was accepted by the insured presumably with knowledge on his part that in a certain contingency the liability of the company was thus limited. It is competent for an insurance company to stipulate against intentional self-destruction, whether it be the voluntary act of an accountable moral agent or not. *Bigelow* v. *Berkshire Life Ins. Co.* 93 U. S. 284. In the opinion of the court in that case, Mr. Justice Davis said:

"The insurers in this case have * * * sought to avoid altogether this class of risks," (meaning risks in case of suicide, sane or insane.) "If they have succeeded in doing so, it is our duty to give effect to the contract as neither the policy of the law nor sound morals forbid them to make it. If they are at liberty to stipulate against hazardous occupations, unhealthy climates, or death by the hands of the law, or in consequence of injuries received when intoxicated, surely it is competent for them to stipulate against intentional self-destruction, whether it be the voluntary act of an accountable moral agent or not. It is not perceived why they cannot limit their liability if the assured is in proper language told of the extent of the limitation, and it is not against public policy."

If, therefore, it is competent for the insurer to stipulate against self-destruction, whether the act be committed when the insured is sane or insane, it is not perceived why it is not equally competent for the insurer, in the policy it issues, to limit the extent of its liability in case of suicide when insane. Nor is such limitation in any true sense repugnant to previous general declarations of liability, especially where all the provisions stand in connection with each other, and, therefore, under well-settled rules of construction, must be so construed as to enforce the intention of the parties unambiguously expressed. But upon the theory of repugnancy between the different provisions of the policy in relation to liability, counsel for the plaintiff invokes the rule as to repugnant clauses sometimes applied to conveyances of real estate, or other instruments under seal, namely, that a grant in general cannot be restrained by subsequent clauses limiting the extent of the grant; or, as the maxim is stated in 4 Greenl. Cruise, 177: "Where there are conflicting declarations of the use in the same instrument, the first shall prevail, the maxim being the first deed and the last will." And *Barney* v. *Miller*, 18 Iowa, 466; *Drew* v. *Drew*, 28 N. H. 489; *Thornhill* v. *Hall*, 2 Clark & F. 22; *Green Bay & M. Canal Co.* v. *Hewett*, 55 Wis. 96, 104; S. C. 12 N. W. Rep. 382,—are cited as authorities in support of the proposition that the limitation of liability expressed in the exception in this

policy is to be rejected as repugnant to other preceding clauses.    But all that was held in *Barney* v. *Miller* was that, where a deed of conveyance contains a general description of the property sought to be conveyed which is definite and certain within itself, and is followed also by a particular description, the latter will not restrict the grant made by the former.    And the court are careful to say that "this is a rule of construction, and is, of course, limited to the cases which are within it.    Where the general description is indefinite and uncertain, and reference to the particular description must be had in order to ascertain with certainty the subject of the grant, in such cases, the rule does not apply.    But then the whole language will be taken together, and though it may be ambiguous, or even contradictory, if, upon the whole instrument, there is sufficient to manifest the intention of the parties with reasonable certainty, that will suffice."

The same rule was applied in *Drew* v. *Drew;* but in that case the court say:

"The whole language of the deed is to be considered together, and effect is to be given, if it may be, to every part.    It is well said by PHELPS, J., in [*Hibbard* v. *Hurlburt,*] 10 Vt. 178: 'It is a well-settled rule that the whole instrument must be taken together.    Each clause is to be regarded as qualified by others having reference to the same subject, and the intent is to be gathered from the whole.    If, then, by any rational construction the several parts can be made to harmonize and to consist with the obvious general intent of the maker, there can be no good reason for rejecting any part, or denying it its legitimate effect.'    No word or clause or sentence is to be rejected or overlooked, if a reasonable and consistent construction can be given to it.    In former times something has been made to depend upon the order of sentences or the part of the instrument where qualifying or restrictive words were found; but the general rule is now settled that their natural effect and weight is to be given to every part of the language used, in whatever part of the instrument it is found."

In *Thornhill* v. *Hall* it was stated as a rule of the courts in construing written instruments, that when an interest is given, or an estate conveyed, in one clause of the instrument, in clear and decisive terms, such interest or estate cannot be taken away or cut down by *raising a doubt* upon the extent and meaning and application of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving that interest or estate.

In *Green Bay & M. Canal Co.* v. *Hewett, supra;* there was a deed which declared in the granting clause that the grantor released, quitclaimed, and conveyed all his claim, right, title, and interest, of every name and nature, legal and equitable, in and to the land.    Independent of this clause, and not standing in connection with it, was another, which declared that the interest and title intended to be conveyed was only that acquired by the grantor by virtue of a certain other deed previously executed to him.    And it was held that the two clauses were inconsistent, and that the granting clause must prevail.    Here there were two clearly conflicting clauses.    As the court says in its opinion: "Two

conflicting intentions were clearly expressed, one just as clearly and emphatically as the other, and the old rule was applied, that the former clause should stand and the latter be rejected." But the court was careful to observe further that this was to some extent an arbitrary rule of construction, and because arbitrary, should not be resorted to, except in cases of absolute necessity. "If, from the whole instrument, the true intent of the parties can be gathered, that intention should prevail." See, also, an instructive note on the subject in 4 Greenl. Cruise, 174.

As before remarked, no repugnancy in the provisions of this policy with reference to liability is perceived; and applying to the case well-recognized rules of construction, none of the cases referred to sustain such a determination of the rights of the parties under this policy as is contended for by counsel for the plaintiff. Indeed, the distinction between the case in hand and those cases seems so plain, and the rule of construction to be applied so clear, as to forbid serious discussion of the question; and the court is of the opinion that by virtue of the clauses in the policy relating to liability of the company, the jury having found that the insured died by his own hand when insane, the recovery of the plaintiff upon the policy in question, must be limited to the amount of the premiums paid by the insured on the policy, amounting to $272.80, with interest at 7 per cent. from January 6, 1884.

The observations made and conclusions announced in relation to the validity of the clause in policy No. 105,844, limiting the extent of liability of the company in case of self-destruction by the insured when insane, and concerning repugnancy between that clause and others which precede it, apply with equal force to policy No. 115,-218, and nothing need be added upon that branch of the case. But as to the last-mentioned policy,—the provisions of which are somewhat different from those contained in the other policy,—it is further contended by the plaintiff that the option reserved by the company to pay the sum insured, or to refund the premiums received, was lost or waived by the alleged neglect of the company to give notice to the beneficiary of its election, within the period contemplated by the policy, or required by law; and, therefore, that it is now liable for the full amount of the insurance named in the policy. The clause here in question, as we have seen, provides that "if it *shall be shown* that the insured, at the time of taking his life, was insane, the company will pay the sum insured, or refund the premiums actually received, with interest thereon, according to its judgment of the equities of the case. This option is distinctly reserved by the company, and is made a part of this contract."

To the point made in the brief of plaintiff's counsel, that the company could not thus make itself the arbiter or judge of the amount it would pay, it need only be replied that nothing in that respect is perceived in this provision which is not the legitimate subject-matter of

contract between the parties, or contrary to public policy. It is not like the case of a policy which provides that the whole matter in controversy, including even all right of recovery, shall be submitted to arbitration, which shall be final and conclusive. The provision in question does not attempt to deprive the party of his right to invoke the authority of a court of competent jurisdiction upon points of difference arising under the contract. Liability to pay some amount is admitted, and the effect of the whole clause is simply to reserve to the insurer an option either to pay the sum insured, or the premiums received, with interest, upon the happening of a certain event. One or the other the insurer *must pay*, as the fact may be ultimately determined with reference to sanity or insanity. That this option must be seasonably declared by the company to the beneficiary may, for the purposes of this case, be taken as a proposition not open to dispute. When the right to exercise the option must be regarded as waived or lost by delay in giving notice to pay one sum or the other, is the real point in the present contention. The death in this case occurred January 6, 1884. Notice and proof of death were duly given. The undisputed evidence shows that the proofs were received by the company, January 12th. The policy provides that the company will make payment within 60 days after due notice and proof of death, which time expired March 28th. It is urged by counsel for the plaintiff that, to avail itself of the right to refund the premiums received, with interest, the company should have given notice of its election so to do within the time, after notice and proof of death, thus fixed in the policy, for payment; and that, by failing so to do, it now has no right to exercise the option reserved in the policy. But this view of the contract cannot, I think, be maintained, for it seems clear from the provision of the policy which has been previously quoted, that the right of the company to exercise the option could not be waived or lost until it *should be shown* that the insured, at the time of taking his life, was insane. And this might not be shown in the proofs of death, and perhaps not until insanity should be established in due course of judicial investigation. The company could not be required to exercise the option until it was shown that the death was one that called for its exercise. Conceding that prompt action was required on the part of the company, there could be no fatal laches until it was clearly made to appear that the insured, at the time of self-destruction, was insane. And I take it this means that the fact shall be shown by competent and sufficient evidence. At all events, the company, I think, would have the right to exact that character of evidence before it would be chargeable with such laches as would occasion a loss of the right to exercise the option reserved in the contract. The contention of the plaintiff that her right of action to recover the full sum insured became a vested right at the expiration of 60 days from the time of giving notice and making proof of death, in the sense that the accruing of such right operated to deprive the defendant of the right

at any time thereafter to exercise the option it had reserved, is, it seems to me, erroneous, because all the various provisions of the policy must be considered together, and, if possible, made so to harmonize, as to carry out the true intention of the parties; and in that view, such effect should be given to both the 60-day clause and the option clause as will not make the operation of one destroy the other. That such would be the effect is plain, if we were to hold that the option must be exercised within the 60 days after notice and proof of death, without regard to the actual time when it was shown that the insured was insane when he committed the act of self-destruction.

Upon a reasonable construction of the provisions of the policy, therefore, I am of the opinion that the failure of the company to give notice of its election under the option clause within 60 days after notice and proof of death, would not *necessarily* cause a waiver or loss of the right to exercise the option reserved. It is an admitted fact in this case that the proofs of death furnished to the company did not show that the insured was insane when he took his life. Nor did they state how the death occurred. It is true that the proofs were accompanied by a copy of the inquest and verdict of the coroner's jury; but that would not be evidence against the plaintiff in favor of the company. And, certainly, its efficacy would be no greater against the company than in its favor. In view of the language of the option clause which gives to the company, *when it shall be shown* that the insured at the time of taking his life was insane, the right to say whether it would pay the sum insured, or refund the premiums actually received, with interest, I am not prepared to hold that the option reserved might not be exercised even upon trial of the case, after the introduction of competent and legal evidence establishing insanity at the time of self-destruction. But it is not necessary so to hold in this case, for the jury has found that on the fifth day of May, 1884, and before the commencement of this suit, the company notified the plaintiff that it would only refund the premiums received by it from the deceased on policy No. 115,218; and that on the fourteenth day of March of that year it gave to its local agent at Milwaukee a notice of similar purport. Conceding, then, that it was the duty of the company to give to the plaintiff notice of its election within a reasonable time after notice and proof of death, the question is, was not the notice of May 5th given within a reasonable time? I am of the opinion that it was, and that there was no such laches on the part of the company as caused a waiver or loss of its right to exercise the option reserved in the contract.

This question has been argued by the plaintiff's counsel as if the election to pay the lesser sum were the enforcement of a forfeiture. But this is not a correct view of the case. A forfeiture implies a loss of all rightful claim and relief from all liability. But here the company agreed, in any event, to pay one or the other of two sums of money. As before observed, it was competent for the parties thus to contract.

A breach of such a contract occurs only when neither of the sums is paid *after it has been shown* that the insured was insane when he took his life. The question is rather one of the measure of damages which the plaintiff is entitled to recover, than one involving the enforcement of a forfeiture in the sense in which the question of forfeiture has been urged upon the consideration of the court.

Cases are cited in the briefs of counsel in support of his contention, which I think can hardly be regarded as applicable to the question in judgment. They are cases in which, for example, it was held that if a contract be made in the alternative to do one of two things *by a certain day*, the party has until that day to elect which of them he will perform; but if he suffers that day to elapse without performing either, his contract is broken, and his right of election lost; or cases where one of the contracting parties was to do one thing or another *within a given time,* and was entitled to notice from the other party, in order to know which thing he was to do; or cases where an *obligee* had reserved an option to himself by which he could control the event on which the duty of the obligor depended; or cases where a loss of valuable rights would result from the failure to declare an option which had been reserved within a prescribed time. These cases are distinguishable from the case in hand. For here the contract is not to do one of two things *by a certain day.* Nor has the failure of the insurer to give earlier notice of his election to refund the premiums, caused the plaintiff any loss of rights which she would otherwise possess. As before observed, it was not until it should be shown that the insured was insane at the time of self-destruction, that the company could be called on to elect whether it would pay the sum insured, or refund the premium, with interest. Nor is the case, I think, even by analogy or upon principle, like others referred to on the argument, where, upon proofs of loss being received and retained by the insurance company, without objection, it was held that in a suit upon the policy, a technical defense that the proofs were insufficient could not be entertained. Here, notice was given that the company elected to refund the premiums, with interest, and would pay nothing more, within little more than three months after notice and proof of death. These suits were begun, and the expenses incident thereto were incurred, after this notice was given. And, giving to the contract a construction in accordance with what seems to be the clear meaning of its provisions, and the true intention of the parties, the conclusion of the court is that the option reserved in the policy has been duly exercised by the company, and must be recognized as efficacious for the purpose for which it was exercised; and, therefore, that the liability of the company, upon this policy, as upon the other, is limited to the amount of the premium actually received by the company, with interest, which on the sixth day of January, 1884, amounted to $59.51, as found by the jury.