## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 31 2020, 5:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Jeremy J. Grogg
Jared P. Baker
Burt, Blee, Dixon, Sutton & Bloom, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES

Stephen R. Snyder
Randall L. Morgan
Snyder Morgan Federoff & Kuchmay LLP
Syracuse, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darrin Lincoln, Sherri Lincoln, and Raymond Hartman, <br> *Appellants-Defendants,* <br><br> v. <br><br> Carlos Rico and Maria Guadalupe Rico, <br> *Appellees-Plaintiffs* | March 31, 2020 <br><br> Court of Appeals Case No. 19A-PL-1476 <br><br> Appeal from the Kosciusko Circuit Court <br><br> The Honorable Michael W. Reed, Judge <br><br> Trial Court Cause No. 43C01-1702-PL-11 |

**May, Judge.**

[1] Darrin Lincoln, Sherri Lincoln, and Raymond Hartman (collectively, "Lincolns") appeal the trial court's ruling permanently enjoining them from

placing any obstruction on the property of Carlos Rico and Maria Guadalupe Rico (collectively, "Ricos"). The Lincolns raise four issues on appeal, which we revise and restate as one issue - whether the trial court improperly granted the Ricos' motion for permanent injunction. We affirm.

## Facts and Procedural History

[2] The Ricos own real estate commonly known as 309 East Van Buren Street, Leesburg, Indiana ("Rico Property"). A. Maxine McMillan and Charles G. McMillian conveyed the Rico Property to the Ricos on November 10, 1989, via Warranty Deed duly recorded in the Office of the Recorder of Kosciusko County, Indiana. The November 10, 1989, Warranty Deed first described the Rico Property as:

> Commencing at a point 24 rods and 12 links west of the east section line of Section 8, Township 33 North, Range 6 East, on the north line of Van Buren Street in the Town of Leesburg, thence north 24 rods and 12 links; thence east to a point 186 feet west of the west line of the right-of-way of the Cincinnati, Wabash and Michigan Railway Company (now Big Four Railway); thence due south 24 rods and 12 links; thence west on the north line of Van Buren Street to the place of beginning.

(Appellee Ex. 12 (hereinafter "First Description").) Immediately thereafter, the Warranty Deed stated:

> The above described tract also being more particularly described as follows:

Part of the Northeast Quarter of Section 8, Township 33 North, Range 6 East, Kosciusko County, Indiana, more particularly described as follows, to wit:

Commencing at the point of intersection of the centerline of the New York Central Railroad (Formerly the Cincinnati, Wabash and Michigan Railway Co.) with the north right-of-way line of Van Buren Street in the Town of Leesburg, Indiana; thence West, on and along said north right-of-way line, a distance of 232.7 feet to the true point of beginning; thence continuing west, on and along said north right-of-way line, a distance of 113.4 feet to an iron pipe found; thence northerly, by an interior angle of 89 degrees 23 minutes 20 seconds, on and along a line established by monuments found a distance of 386.5 feet (recorded 403.92 feet) to an old wood corner post found: thence easterly, by an interior angle of 89 degrees 36 minutes 20 seconds, on and along a line established by an existing line fence, a distance of 116.0 feet to an old wood corner post found, situated 232.7 feet west of the centerline of said New York Central Railroad; thence southerly, by an interior angle of 90 degrees 00 minutes 20 seconds, parallel to the centerline of said railroad, a distance of 384.5 feet (Recorded 403.92 feet) to the true point of beginning.

(*Id.* (hereinafter "Second Description").) The First Description was copied from the deed by which the McMillans acquired title. The Second Description was derived from a survey performed by Jerry Walker in 1989.

[3] The Lincolns own real estate to the east of the Rico Property, commonly known as 311 East Van Buren Street, Leesburg, Indiana ("Lincoln Property"). Raymond Hartman moved onto the Lincoln Property in 1961. He subsequently conveyed the Lincoln Property to Darrin Lincoln and Sherri

Lincoln in 2016 via Warranty Deed.[1]  A driveway runs near the area where the eastern edge of the Rico Property meets the western edge of the Lincoln Property.  The Ricos owned and operated a landscape and lawn care business on the north portion of the Rico Property.  The Ricos utilized the driveway to access their business facilities in the rear of their property.

[4]  The Lincolns constructed a fence down the middle of the driveway in January 2017.  The fence prevented the Ricos from accessing the driveway.  The driveway was the only improved roadway leading to the rear of the Rico Property.  Consequently, the Ricos began using an unfinished access route off Old State Road 15 through an additional lot owned by the Ricos to access the rear of the Rico Property.  The access route was often muddy, causing the Ricos' vehicles and equipment to get stuck and damaged.  The Ricos filed suit on February 6, 2017, seeking preliminary and permanent injunctive relief and damages.  The court held a hearing on the Rico's motion for preliminary injunction on April 4, 2017, and the court entered a preliminary injunction on April 20, 2017, ordering the Lincolns to remove the fence.

[5]  On April 2, 2019, the court held a bench trial on the Ricos' verified complaint for permanent injunction and damages.  After entry of the preliminary injunction, the Ricos moved to a different residence.  While they no longer lived at the Rico Property or operated their business on the property at the time

---

[1] Hartman retained a life estate in the Lincoln Property.

of the bench trial, they still owned the Rico Property and wished to sell it. After the bench trial, both sides submitted proposed findings of fact and conclusions of law. On May 29, 2019, the court issued its findings of fact, conclusions of law, and order enjoining the Lincolns

> from placing any obstruction on the Rico Property, as that property is described in the top legal description contained in the deed from McMillan to [Rico], being determined as beginning on the right-of-way line of Van Buren Street at a point 186 feet west of the original 66-foot right-of-way of the railroad and running thence due north.

(App. Vol. II at 14.)

# Discussion and Decision

Indiana Trial Rule 52(A) requires the trial court to make special findings of fact without request in granting or refusing a preliminary injunction. However, Rule 52 does not require findings of fact when granting or refusing a permanent injunction.

> Where, as here, the trial court enters findings of fact and conclusions thereon without an Indiana Trial Rule 52 written request from a party, the entry of findings and conclusions is considered to be sua sponte. *Dana Companies, LLC v. Chaffee Rentals,* 1 N.E.3d 738, 747 (Ind. Ct. App. 2013), *trans. denied.* Where the trial court enters specific findings sua sponte, the findings control our review and the judgment only as to the issues those specific findings cover. *Id.* Where there are no specific findings, a general judgment standard applies and we

> may affirm on any legal theory supported by the evidence adduced at trial. *Id.*

> A two-tier standard of review is applied to the sua sponte findings and conclusions made: whether the evidence supports the findings, and whether the findings support the judgment. *Id.* Findings and conclusions will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* In conducting our review, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Id.* We will neither reweigh the evidence nor assess witness credibility. *Id.*

*Samples v. Wilson*, 12 N.E.3d 946, 949-50 (Ind. Ct. App. 2014). If a party does not challenge the factual findings of the trial court, we must accept them as true. *Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992).

[7] A permanent injunction is a judicial decree "prohibiting injurious interference with rights." *Drees Co., Inc. v. Thompson*, 868 N.E.2d 32, 41 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*. We will reverse the grant of a permanent injunction only when it was arbitrarily granted or amounted to an abuse of discretion. *Id*. "A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances, or if it misinterprets the law." *Id*. The trial court is to evaluate

> four factors in determining the propriety of permanent injunctive relief: (1) whether the plaintiff has succeeded on the merits; (2) whether plaintiff's remedies at law are adequate; (3) whether the threatened injury to the plaintiff outweighs the threatened harm a

grant of relief would occasion upon the defendant; and (4) whether the public interest would be disserved by granting relief.

*Id.*

# 1. Whether the Ricos Succeeded on the Merits

[8]    As to this issue, the trial court found and concluded as follows:

1.   Plaintiffs are the owners of real estate commonly known as 309 E. Van Buren Street, Leesburg, Indiana, and legally described in the Warranty Deed from A. Maxine McMillan and Charles G. McMillan to Carlos Rico and Jennifer M. Rico dated November 10, 1989, and recorded in Deed Record 336, Page 229 in the records of the Recorder of Kosciusko County, Indiana.  (Exhibit 12) ("Rico Property").

2.   The Warranty Deed from McMillan to Rico contains two legal descriptions, the first description being the legal description by which McMillan took title and the second description being one prepared by Jerry K. Walker, surveyor, apparently prepared based on a survey certified by Jerry K. Walker December 1, 1989 (Exhibit 7).

3.   The two legal descriptions contained in the deed from McMillan to Rico are not identical.

4.   The legal description prepared by Jerry K. Walker is based on monuments found in the field as opposed to the original description contained at the top of the deed from McMillan to Rico.

5.   The original, larger tract from which the Rico parcel devolved is contained in a Warranty Deed from John R. Bain to

Gardner Watts dated May 21, 1842, and recorded November 15, 1843, in Deed Record 4, Page 56, in the Office of the Recorder of Kosciusko County, Indiana.

6. The railroad, to which reference is made in numerous exhibits in this matter, was established by grant of right-of-way on April 6, 1870, and had a width of 66 feet (Exhibit 2).

7. The next deed in the chain of title to the Rico Property was from Thomas Lay *et al.* to Jordan Becknell dated February 8, 1884, and recorded March 3, 1884. That deed conveys a parcel 24 rods and 12 links square "excepting therefrom the right-of-way of the C.W. and M. Railway" (Exhibit 3), and has a beginning point at the intersection of the east line of Section 8, Township 33 North, Range 6 East, and the north line of the right-of-way of Van Buren Street extended.

8. Subsequent to the grant of the railroad right-of-way, there was a conveyance of a tract 66 feet by 132 feet to the same railroad, the east line of which was coterminous with the west line of the railroad right-of-way. The south line of that tract was the north right-of-way line of Van Buren Street. That deed was from Margaret J. Thomas to the railroad, dated March 18, 1898, and recorded April 5, 1898 (Exhibit 4). This was an absolute conveyance, containing warranties and not a grant of right-of-way.

9. The deed by which Defendants took title is dated September 2, 2016, and recorded September 9, 2016, as Instrument No. 2016090378 in the Office of the Recorder of Kosciusko County, Indiana, and contains as a beginning point of the description the point of intersection of the west right-of-way line of the railway and the north line of Van Buren Street if extended (Exhibit 8). The address of Defendants' property is 311 E. Van Buren Street ("Lincoln Property").

10. A survey was prepared by Marbach & Brady Land Surveying, Inc., dated April 15, 1997, which accurately reflects the existence of the original 66-foot wide railway right-of-way, the conveyance of the 66 foot x 132-foot tract to the railway and the proper location of the Lincoln Property (Exhibit 5). The Marbach & Brady survey shows the beginning point of the legal description for the Lincoln Property to be 66 feet west of the point of intersection of the north right-of-way line of Van Buren Street extended and the west right-of-way line of the original 66-foot right-of-way of the railway.

11. The Marbach & Brady survey also shows an area 16 feet at the north, 13 feet at the south and adjacent to the original right-of-way line of the railway to be the property of the railroad 'by adverse possession'. [sic] The surveyor's report appearing at page 2 of the Marbach & Brady survey explains the method utilized for the determination of the west line of the right-of-way of the railway. This strip begins at the north line of the 60-foot x 132-foot strip (Exhibit 4) and runs north. The numbers used by Marbach & Brady correspond to numbers shown on the Val map (Exhibits 6 and B).

12. Maintained in the Office of the Kosciusko County Surveyor are certain maps known as "Val" maps depicting the location of various railroad rights-of-way in Kosciusko County. These maps are prepared by the railroad and are modified from time to time to reflect changes in railroad property (Testimony of M. Kissinger). Exhibit 6 and Exhibit A depict the location of railroad property at the intersection of the railroad and Van Buren Street in Leesburg, Indiana. These exhibits evidence the transfer of the 66-foot x 132-foot parcel (No. 11) shown in Exhibit 4, and the adverse possession of an approximate 13-foot wide tract north of the 66-foot x. 132-foot parcel (No. 9). It is impossible to determine from Exhibit 6 or Exhibit B the date on which changes to the original Val map were made. The original date on the Val map is June 3, 1915.

13. The date of conveyance of the original tract from which the Rico Property was later conveyed has as its beginning point the east line of Section 8, Township 33 North, Range 5 East, which is also the section line which would be intersected by the north right-of-way line of Van Buren Street if extended east. The original conveyance, having been made May 21, 1842, makes no reference to the railroad because the railroad did not exist until 1870 (Exhibit 2).

14. The survey of Jerry K. Walker erroneously adds approximately 13 feet to the right-of-way of the railroad, causing the southeast corner of the Rico Property, which is also the southwest corner of the Lincoln Property, to be located 13.7 feet west of its true location (Testimony of M. Kissinger).

15. Christopher McCrea, a registered Indiana land surveyor, indicated his survey showed a 1.5-foot discrepancy from the survey performed by Jerry K. Walker (Exhibit 7). McCrea testified that he only reviewed the deed to Lincoln (Exhibit 8), the Walker survey (Exhibit 7), and the Val map (Exhibit 6). He did not review any deeds in the chain of title to the Rico Property. For the location of items and measurements shown on Exhibit E, McCrea relied on the Walker survey. Any errors contained in the Walker survey were perpetuated by the McCrea survey (Exhibit E). McCrea also testified he located the railroad right-of-way 33 feet West of the east section line, rather than 30 feet as called for in the grant of right-of-way (Exhibit 2). McCrea also testified that he believed Walker began his description at the center of the railroad right-of-way because it would be more expensive to locate the east line of Section 8 and begin the description there, as called for in the original description to the Rico Property, and that a proper survey would begin at the east line of Section 8.

16. Danny McAfee, former owner of Auburn Abstract Company and trained in the examination of titles, testified that although he would have insured title to the Rico Property as described in the Walker survey, based on title documents, the description was inaccurate. He further testified the southeast corner of the Rico Property being the same as the southwest corner of the Lincoln Property was actually located 13.7 feet east of the location shown on the Walker survey in accordance with the title documents.

17. Plaintiffs maintain an access driveway to the rear of Plaintiffs' property which serves as the only means of access to the garage and rear of the property, the rear being the north side of the property.

18. Defendants constructed a fence in such a fashion that it obstructed access to the driveway and prevented access to the rear of Plaintiffs' property.

19. The fence constructed by Defendants was located west of the west line of the Lincoln Property when the west line of the Lincoln Property is properly calculated as being 186 feet west of the west line of the original railroad right-of-way, the only expressly granted right-of-way which exits [sic] or has ever existed immediately north of Van Buren Street.

(App. Vol. II at 8-12.)

[9] The Lincolns do not challenge any of the above findings of fact. [2] Consequently, they stand as proven. *Coles v. McDaniel*, 117 N.E.3d 573, 576 (Ind. Ct. App. 2018) ("Husband does not challenge the trial court's findings, and thus they stand as proven."). Therefore, we look to see if the findings support the trial court's conclusions. *Id*.

[10] The Lincolns contend the trial court's legal conclusion that the First Description controls is erroneous. They argue the Second Description in the Rico Deed should control. The Second Description in the Rico Deed states the Ricos' east property line is 232.7 feet west of the centerline of the New York Central Railroad. If the Second Description controls, the fence was not located on the Rico Property. The Lincolns argue the Second Description is the more particular description contained in the Rico Deed, and where the deed contains multiple descriptions, the more particular description controls. *See Gano v. Aldridge*, 27 Ind. 294, 295 (1866) ("It is a rule of construction that words of particular description will control more general terms of description, when both cannot stand together.").

---

[2] The Lincolns do take issue with the trial court's Finding of Fact 21: "The fence constructed by Defendants was located wholly on property owned by Plaintiffs." (App. Vol. II at 12.) However, Finding of Fact 21 is actually a conclusion of law because it requires the court first determine which description in the Rico Deed is controlling. *See State v. Van Cleave*, 674 N.E.2d 1293, 1296 (Ind. 1996) ("We are not bound by the trial court's characterization of its results as 'findings of fact' or 'conclusions of law.' Rather, we look . . . to the substance of the judgment and will review a legal conclusion as such even if the judgment wrongly classifies it as a finding of fact."), *reh'g granted in part* 681 N.E.2d 181 (Ind. 1997), *cert. denied* 522 U.S. 1119 (1998).

Further, the Lincolns argue that extrinsic evidence supports their position. The Ricos argue the trial court did not err, and the First Description contained in the Rico Deed should control. Rather than provide a more particular description of the property, the Ricos argue the Second Description "as derived from the Walker Survey served as an attempt to make the description 'more updated' rather than 'more particular.'" (Appellee Br. at 18 (quoting Tr. Vol. III at 36, 48)). If the First Description controls, then the fence was located on the Rico Property.

The First Description and the Second Description do not describe identical pieces of land. (App. Vol. II at 8-12.) Nevertheless, the plain language of the Rico Deed indicates that the Second Description was meant to refer to the same land described by the First Description, and the McMillians intended to convey that land to the Ricos. *See Clark v. CSX Transp., Inc.*, 737 N.E.2d 752, 757 (Ind. Ct. App. 2000) ("The object of deed construction is to ascertain the intent of the parties and where there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone."), *reh'g denied*, *trans. denied*. In *Hornet v. Dumbeck*, we quoted a rule of construction pronounced by the Supreme Court of Iowa:

> 'Where a deed of conveyance contains a general description of
> the property conveyed, which is definite and certain in itself, and
> is followed by a particular description also, such particular
> description will not limit or restrict the grant which is clear and
> unambiguous by the general description. *** Where the general
> description is indefinite and uncertain, and reference to the
> particular description must be had, in order to ascertain with

certainty the subject of the grant; in such cases the rule does not apply. But then the whole language will be taken together, and though it may be ambiguous or even contradictory, if, upon the whole instrument, there is sufficient to manifest the intention of the parties with reasonable certainty, that will suffice.'

78 N.E. 691, 695 (Ind. Ct. App. 1906) (quoting *Barney v. Miller*, 18 Iowa 460, 466 (1865)). We also quoted the Supreme Judicial Court of Maine's statement that "'a true and certain description of the grant is never invalidated by the addition of a falsity, when the intention of the parties can be subserved, and the conveyance upheld, by sustaining the true and rejecting the false description.'" *Id.* (quoting *Abbott v. Pike*, 33 Me. 204, 204 (1851)). We went on to note "'a general description, which is definite and certain, cannot be restricted.'" *Id.* at 695 (quoting *College Corner, etc., Co. v. Moss*, 92 Ind. 119, 129 (1883)).

[13]     Here, the First Description takes precedence over the Second Description. The First Description clearly states the Rico Property's boundaries and is a description that prior owners had effectively used to transfer title. The Walker Survey description is an erroneous added description. Therefore, the language from *Hornet* that we have adopted dictates that the First Description controls because it is a definite and certain general description. Given that the First Description is sufficiently particular to identify the land intended to be conveyed, we do not need to look at extrinsic evidence. *See Lippeatt v. Comet Coal & Clay Co., Inc.*, 419 N.E.2d 1332, 1335 (Ind. Ct. App. 1981) (holding deed was unambiguous and therefore there was no need to rely on extrinsic evidence), *reh'g denied*.

# 2. Plaintiff's Remedy at Law and Harm

As to these issues, the trial court found and concluded as follows:

22. If Defendants are not permanently enjoined from reconstructing the fence or otherwise obstructing Plaintiffs' access to the driveway, Plaintiffs will suffer irreparable harm in that they will not have unimpeded use and control over their real estate and they will not have adequate access to the rear of their property.

23. Plaintiffs are without adequate remedy at law.

24. Defendants have placed an apparent cloud on the Rico Property title by building the fence and continuing to assert a claim of right to restrict Plaintiff's access to the rear of the property.

25. Plaintiffs have been unable to sell the Rico Property until the apparent cloud on the property's title has been removed and Plaintiffs can convey title to a potential buyer which includes access to a public road, specifically, the connecting driveway to Van Buren Street, which is the only way to access the property from a public road.

26. The driveway where Defendant placed the fence has been the sole means of public road access for the original Rico Property since well before either Plaintiffs or Defendants owned their respective properties and continues to be the sole public road access.

27. Plaintiffs have used the driveway as the sole public road access since purchasing the property in 1989, and continued to do so until Defendants blocked the drive with a fence. Because that drive is the only public access for the original Rico Property,

this Court issued a preliminary injunction and Order requiring Defendants to remove the fence.

28. Photographic evidence shows that the current actual use, and apparent historical use, of the parties' real estate and driveway, including the location of the driveway and the tree line between the two (2) tracts of real estate, is consistent with the location of the property line as determined by the Court.

(App. Vol. II at 12-13.) Whether the Ricos have an adequate remedy at law and whether they have suffered clear, irreparable harm are more properly considered legal conclusions rather than findings of fact. *See supra* note 2. We regard the remaining findings as true because the Lincolns do not challenge them on appeal. *See Coles*, 117 N.E.3d at 576 (unchallenged findings are accepted as true).

[15] The Lincolns argue the trial court erred in issuing a permanent injunction because the Ricos have an adequate remedy at law and have not suffered clear, irreparable harm. The Lincolns argue the Ricos suffered only monetary harm in the form of lost property value and lost business, such that an award of damages represents an adequate remedy. The Lincolns contend that economic harm alone does not justify issuance of an injunction. *See Ind. State Dept. of Welfare, Medicaid Div. v. Stagner*, 410 N.E.2d 1348, 1354 (Ind. Ct. App. 1980) (holding lost income to medical services provider from delayed Medicaid reimbursement payments was not irreparable harm justifying the issuance of a preliminary injunction).

However, the trial court's findings of fact support the conclusions the Lincolns' challenge. The trial court found that in the absence of an injunction, the Ricos "will not have unimpeded use over their real estate and they will not have adequate access to the rear of their property." (App. Vol. II at 12.) Moreover, the trial court found the Lincolns "have placed an apparent cloud on the Rico Property title[.]" *Id.* The trial court also found the Ricos are unable to sell the Rico Property until the issue is resolved, and the court found the Ricos have used the driveway as the sole public access road since they bought the Rico Property. *Id.*

Landowners suffer harm when they are prevented from having full access to their property. *Ballard v. Harman*, 737 N.E.2d 411, 417-18 (Ind. Ct. App. 2000) (holding appellants had no interest in real estate and affirming injunction prohibiting them from placing materials or obstacles on the real estate), *reh'g denied*. Further, landowners have the right to sell their property. *See Meridian Mortg. Co., Inc. v. State*, 395 N.E.2d 433, 439 (Ind. Ct. App. 1979) ("The three primary indicia of ownership of personal property are Title; possession; and Control, which includes the right to sell, dispose of, or transfer."), *reh'g denied*. Thus, the trial court's findings support its conclusion that the Ricos will suffer clear, irreparable harm in the absence of an injunction because they cannot fully use or sell the Rico Property without an injunction.

The findings also support the trial court's conclusion that without an injunction the Ricos are without adequate remedy at law. The fence prevented the Ricos from full use of the Rico Property. The Lincolns' fence constituted a

continuing trespass on the Rico Property. As we observed long ago, "[t]he law is well-settled that an injunction is a proper remedy to prevent a continued trespass." *Selvia v. Reiteyer*, 295 N.E.2d 869, 875 (Ind. Ct. App. 1973), *reh'g denied*. Even though the Ricos no longer lived or operated a business on the Rico Property at the time of trial, they still owned the property and were entitled to full use of it. Therefore, the trial court did not abuse its discretion when it issued a permanent injunction enjoining the Lincolns from placing an obstruction on the Rico Property.[3] *See Liter's of Ind., Inc. v. Bennett*, 51 N.E.3d 285, 300 (Ind. Ct. App. 2016) (holding permanent injunction should be entered requiring landowner to remove portion of roof that extended over neighbor's property), *reh'g denied*, *trans. denied*.[4]

# Conclusion

[19]  The First Description of the Rico Deed controls because it accurately describes the property the McMillans intended to convey to the Ricos. The Ricos are without adequate remedy at law and would suffer clear, irreparable harm in the

---

[3] The Lincolns also argue that, if we hold the permanent injunction was erroneously granted, then they should receive damages and attorney fees for the issuance of the preliminary injunction that required them to remove the fence. As we affirm the trial court's injunction order, we need not address this argument. *See Leone v. Keesling*, 858 N.E.2d 1009, 1016 n.8 (Ind. Ct. App. 2006) (refusing to address argument that appellant was not entitled to attorney fees), *trans. denied*.

[4] The fourth factor a trial court is to consider in deciding whether to issue a permanent injunction is the impact granting the injunction will have on the public interest. *See Drees Co., Inc.*, 868 N.E.2d at 41. Here the trial court made no findings regarding the public interest. As the parties allege no error with regard to the factor, we need not review this factors. *See, e.g., Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003) (appellate court will not become an advocate for parties).

absence of an injunction because the Lincolns' fence trespassed on the Ricos' property. Therefore, we affirm.

[20] Affirmed.

Crone, J., and Pyle, J., concur.