THE ILLINOIS PIPE LINE COMPANY *v.* INDIANA STATE-WIDE RURAL ELECTRIC MEMBERSHIP CORPORATION ET AL.

[No. 16,244. Filed January 22, 1940.]

*Paul Brown,* and *Simmons & Simmons,* for appellant.

*Chester M. De Witt,* and *Harvey B. Hartsock,* for appellees.

CURTIS, J.—This action was begun in the trial court by the filing of a complaint in two paragraphs by the appellant against the appellees. By the first paragraph it was sought to enjoin the appellees from what was alleged to be a continuous trespass on and over the property of the appellant and from committing continuous and irreparable damage thereto and continuous interference therewith. The second paragraph alleges substantially the same state of facts as the first and seeks the same relief and also seeks additional relief upon the theory that the appellees are maintaining a perpetual and continuing nuisance which should be abated and enjoined. Damages were also sought. To this complaint the appellees filed two paragraphs of answer the first being a separate and

several general denial. The second paragraph of answer omitting formal parts is as follows:

"Come now the defendants The Andrews Asphalt Paving Company, Indiana Statewide Rural Electric Membership Corporation and Henry County Rural Electric Membership Corporation and for their separate and several answers to the plaintiff's complaint for injunction filed herein do separately and severally allege that:

"The defendants Indiana Statewide Rural Electric Membership Corporation and Henry County Rural Electric Membership Corporation are corporations organized and existing under the Indiana Rural Electric Membership Corporation Act, the same being Chapter 175 of the Acts of 1935, as amended by Chapter 258 of the Acts of 1937, by the General Assembly of the State of Indiana."

"Each of these said two defendants was granted by the Public Service Commission of Indiana certificate of public convenience and necessary to build, own, operate, and maintain a system of poles and lines for distributing electric energy in rural territory, including the territory described in the complaint herein as that in which the plaintiff's telegraph and telephone lines are located and said certificates of public convenience and necessity are still in full force and effect.

"The defendant Henry County Rural Electric Membership Corporation has obtained and possesses a permit from the State Highway Commission of Indiana to set its pole lines along any and all state highways in Henry County, Indiana, and has also obtained and possesses a permit by the Board of Commissioners of Henry County, Indiana, to construct, maintain, and operate its electric energy distribution and transmission system in Henry County and in and along the highways mentioned in the description contained in the complaint herein as the routes along which plaintiff's telegraph and telephone lines are con-

structed and are being operated in the said County of Henry, Indiana, and each of and both of said permits is still in full force and effect.

"Neither the written grants and consents alleged to have been given the plaintiff by owners of land abutting the highways along which plaintiff's telegraph and telephone lines are erected and operated in Henry County, Indiana, nor the permits alleged to have been granted to the plaintiff by the Board of County Commissioners of Henry County, Indiana, give, grant, or vest in the plaintiff any exclusive right of way or exclusive right to maintain and operate its poles, lines, and telegraph and telephone system along such highways and it has no such exclusive right.

"The defendant Henry County Rural Electric Membership Corporation, by and with the consent of the defendant Indiana Statewide Rural Electric Membership Corporation and with the last aforementioned defendant as engineer for Henry County Rural Electric Membership Corporation and with the defendant The Andrews Asphalt Paving Company as its contractor and builder, is constructing a system of poles and lines to transmit and distribute electric energy to residents of rural areas in the county of Henry, Indiana, and some parts of counties adjacent to said Henry County.

"Part of the aforesaid electric energy transmission and distribution system being constructed by and for Henry County Rural Electric Membership Corporation, as aforesaid, has been constructed or is being constructed along parts of the same highways alleged in the complaint herein as being partly occupied and used by the plaintiff's telegraph and telephone lines and by reason of the existence of other power or telephone or similar lines along either side or both sides of said highways, it has been, and is necessary to construct part of said system being built by and for defendant Henry County Rural Electric Membership Corporation along that side or

sides of the said highways where plaintiff's said telegraph and telephone lines are erected and existing.

"Said construction of that part of the defendant Henry County Rural Electric Membership Corporation's electric energy system near the plaintiff's telegraph and telephone lines has been done and will be done in a good and workmenlike manner and of good and appropriate materials, all in accordance with the best known practices of constructing such electric energy system and so as to remove the conductors. of electric energy in said defendant's system far enough from the telegraph and telephone lines of the plaintiff, and in such manner, that no interference with the maintenance and operation of the plaintiff's telegraph and telephone lines or its enjoyment and use thereof will be caused by the construction, operation or maintenance of said defendant's electric energy system.

"Constructing, maintaining, and operating electric energy transmission and distribution lines along the public highways in Henry County and other counties in Indiana, parallel with, near, or over telegraph and telephone lines is of common and frequent occurrence. The construction or maintenance, and operation, of that part of defendant's system complained of in the complaint herein is not, and will not be, any threat to the operation of plaintiff's pipe line system or telegraph or telephone lines nor will the same subject plaintiff's property or employees to the hazard of damages or injuries beyond that which is ordinary and frequent to telegraph and telephone lines erected along highways in the State of Indiana and other states, and which must reasonably have been anticipated and assumed by the plaintiff when it erected its said telegraph and telephone lines along such highways.

"The defendants The Andrew Asphalt Paving Company, Henry County Rural Electric Membership Corporation and Indiana Statewide Rural

Electric Membership Corporation deny each and every material allegation in the complaint herein contained except those which in this paragraph of answer are expressly admitted.

"Wherefore, said defendants Indiana Statewide Rural Electric Membership Corporation and Henry County Rural Electric Membership Corporation pray that the restraining order herein issued be dissolved; that no temporary or other injunction be issued against the defendants, or any of them; that the plaintiff take nothing by its complaint herein; and for all other legal and equitable relief in the premises to which the defendants, or any of them, is entitled."

No reply was filed.

Upon the issues thus made the cause was tried before the court, resulting in the following judgment: "It is now considered, ordered and adjudged by the court that the plaintiff take nothing by its action and that the restraining order heretofore issued at the instance of the plaintiff be in all things dissolved". There was also a judgment in favor of the appellees for costs. The appellant seasonably filed a motion for a new trial which was overruled and this appeal prayed and perfected. The error assigned is the ruling on the motion for a new trial which contained the causes or grounds that the decision of the court is not sustained by sufficient evidence and is contrary to law.

It was stipulated between the parties that prior to the commencement of this action, the attorney and representatives of the appellant went to the Public Service Commission of Indiana and were then told by the commission that it had no jurisdiction to determine the controversy between the parties and that no petition was ever filed by the appellant with the commission.

The controlling facts are not greatly in dispute. They, together with the appellant's contentions, are clearly stated by the appellant in its brief from which we quote as follows: "The appellant is a corporation, organized under the laws of the State of Ohio, and has complied with the laws, and is qualified to transact business in Indiana."

"That appellees, Indiana Statewide Rural Electric Membership Corporation and Henry County Rural Electric Membership Corporation, are corporations, organized under the laws of the State of Indiana, agreeable to Chapter 175, approved March 9, 1935, as published in Acts 1935, and as amended by Chapter 258, Acts 1937.

"That appellee, The Andrews Asphalt Paving Company, is a corporation organized under the laws of the State of Ohio, and is a construction company, and engaged as a contractor in general construction work, including the construction of telegraph and telephone lines.

"Many years prior to 1929 a main pipe line was constructed for the transportation of crude petroleum oil, and a telephone and telegraph line was constructed in connection therewith from Wood River, Illinois, extending through Illinois, Indiana and Ohio, and terminating at the state line dividing Ohio and Pennsylvania, in length about one thousand miles. A branch pipe line, and telephone and telegraph lines, were also constructed running from Wood River, Illinois, passing Saint Francisville, Illinois, Owensboro, Kentucky, a distance of about eighty miles, which lines were the property of the appellant, long prior to the year 1929. In 1929 The Illinois Pipe Line Company commenced the construction of a branch pipe line, and telephone and telegraph lines, running from Elwood, Indiana, and passing through Henry County,

Indiana, terminating at Latonia, Kentucky, a distance of about one hundred twenty-five miles. These pipe lines were constructed of standard iron pipe from six inches to twelve inches in diameter, and were laid under ground upon a private right of way procured from the landowners, and the telephone and telegraph lines were also constructed on private rights of way procured from the landowners, and upon highways, by virtue of an ordinance or franchise procured from the Board of Commissioners of the several counties.

"The pipe line and telephone and telegraph lines passing through Henry County, are the lines which are most directly involved in this case. These pipe lines are common carriers and are under the supervision of the Interstate Commerce Commission. The only business transacted by The Illinois Pipe Line Company is the transportation of crude petroleum oil for its patrons and customers under such tariff charges and regulations as are fixed by the Interstate Commerce Commission of the United States. It has no interest in the crude petroleum oil transported through its lines, except to collect the carrier charges, the same as any other common carrier.

"The construction of the pipe line, telephone and telegraph lines, from Elwood to Latonia, Kentucky, was commenced in the year 1929 and was finished during the year 1930.

"The telephone and telegraph line in Henry County, Indiana, for a distance of five and one-half miles, involved in this case, was constructed and completed on and over county public highways in the years 1929 and 1930. Before constructing the pipe line, telephone and telegraph lines, the appellant procured its private rights of way from each of the landowners abutting on said highway in Henry County,

including the five and one-half miles in controversy. The appellant also procured from the Board of Commissioners of the county of Henry an ordinance or franchise granting it the right to construct said pipe line, telephone and telegraph lines, in Henry County, Indiana, and over the five and one-half miles in controversy. These lines were constructed in strict compliance with the provisions of the private right of way contracts and in strict conformity to the franchise procured from the Board of Commissioners of the county of Henry.

"These pipe lines carry an average of seventy-five thousand barrels of crude petroleum oil each day. That is to say, that seventy-five thousand barrels of crude petroleum oil are transported through these lines each and every day. These telephone lines are used in connection with the pipe lines and are necessary in the handling of the oil to the same extent, and to the same purpose, that telegraph and telephone lines are used by railroads in the transaction of railroad business.

"The cost of constructing these telephone lines in Indiana and the lines involved is from one thousand to twelve hundred dollars per mile. The telephone lines of the appellant are constructed in the usual way by firmly planting strong poles in the earth a proper distance from each other and by placing cross arms on the poles a proper distance above the earth, and by stringing wires about twenty inches distant from each other, over which to transmit messages. Such is the general construction of the telephone lines of the appellant.

"The appellant had enjoyed the use of its lines for many years without interference or molestation from any one before the appellees overbuilt the same. In the year 1937 the appellees commenced the con-

struction of a power line for five and one-half miles on the same right of way in the following form and manner. They planted poles firmly in the earth in the exact line with the poles supporting the wires of the appellant, such poles extending in length from seven to eight feet above the poles of the appellant, and by placing cross arms on said poles about seven or eight feet above the cross arms on the poles belonging to appellant, and by placing two wires side by side on said cross arms in direct line with the wires of appellant, about twenty inches apart, seven or eight feet above the wires of the appellant, which wires and transmission line are to be 6,900/12,000 volts, 3 phase, and 6,900 volts single phase.

"All of the acts of the appellees, done upon the premises, were without the consent of, and over the protest and objection of the appellant. The appellant insists that the appellees were trespassers and wrong-doers, and were also engaged in creating and maintaining a nuisance, and should have been restrained and enjoined from so doing.

"The facts, as to when and how the lines of the appellant were constructed and maintained, and the cost thereof, and the use of the same by the appellant for the many years, before the power line was constructed, or attempted to be constructed, are not controverted, and are sustained by all of the evidence without contradiction. The acts and conduct of the appellees are also proven by the evidence, and are not controverted. The question to be decided by the court is as to whether or not the appellees had a legal right to overbuild the lines of the appellant with the lines of the appellee, Henry County Rural Electric Membership Corporation, in form and manner employed by it, and its right, if any, to maintain and use such lines, as contemplated by it, after such lines

are so overbuilt, or, should said appellees be enjoined from so doing.''

In its reply brief the appellant challenges the sufficiency of the appellees' brief in matters of form to present anything. While said brief is not as well ordered as it might be, yet we are able to understand its propositions. Even if there were no appellees' brief the policy of this court and the Supreme Court is not to reverse for that reason but will require the appellant to make a prima facie showing of reversible error. We proceed, therefore to examine the case upon its merits.

The appellant in its brief states three propositions with numerous points under each. In its proposition number one it asserts that ''the evidence conclusively shows that the appellees committed and were committing a trespass upon the rights and property of appellant to the injury and damage of the property of the appellant and to the appellant, and that the appellees had created and were maintaining a perpetual nuisance to the injury and damage of the property of appellant and to the appellant and would continue to do so unless restrained and enjoined from so doing, and that the appellant had no adequate remedy at law''. Its proposition two is that the court erred in the ruling on the motion for a new trial in that the decision of the court is contrary to law. With reference to this proposition the appellant says that it ''presents the same questions as is presented by proposition 1.'' The same points and authorities cited in support of proposition 1 are said by the appellant to ''support or tend to support proposition 2''. Proposition 3 is that ''The rights of the appellant to occupy the highway with its telephone and telegraph lines are exclusive as to the appellees''. Under the circumstances we have concluded to consider the appel-

lant's propositions together in the main rather than separately.

There is no contention made by the appellant that the physical flow of oil through its pipe line is physically interfered with by the appellees. It is contended however that "these telephone lines are used in connection with the pipe lines and are necessary in the handling of the oil to the same extent, and to the same purpose, that telegraph and telephone lines are used by railroads in the transaction of railroad business". The chief complaint against the appellees is succinctly stated by the appellant in a previous part of this opinion and may be summarized to be that the appellant had enjoyed the use of its lines for many years without interference or molestation from any one until the appellees overbuilt them. The overbuilding consisted in that the appellees in the year 1937 commenced the construction of a power line for five and one-half miles on the same public highway as was used by the appellant and planted poles in the earth in the exact line with the poles supporting the said wires of the appellant, such poles extending in length from seven to eight feet above the poles of the appellant and by placing cross arms on said poles about seven or eight feet above cross arms belonging to the appellant and by placing two wires side by side on said cross arms in direct overhead line with the wires of the appellant. The appellees' wires were thus seven or eight feet above the wires of the appellant and were to carry "6900/12000 volts, 3 phase, and 6900 volts single phase."

By reason of the prior grant to the appellant to use the highway on which to erect its said telephone poles and mount its wires and by reason of its prior use of the highway for that purpose, the appellant first contends that as between it and

the appellees its said grant is exclusive. It secondly contends that the use made of the highway by the appellees constitutes an additional burden to the fee of the landowners along the highway and cannot be so used without compensation to the abutting owners and that ''the appellant, by virtue of its right of way grants from all of the landowners abutting upon the highway, stands in the same position as such abutting landowners''. The appellant is wrong in both of these contentions. The grant and the use made of the highway by the appellant for its poles and wires, used exclusively in the conduct of its own business would come far short of constituting an exclusive right to use the highway. Even if the telephone poles and wires of the appellant were used in the general interest of the public by the transmission over it of messages of the public at large it would still fall far short of carrying an exclusive use of said highway for that purpose or any other legitimate highway purpose. Both the appellant and the appellees with the exception of the paving company apparently have valid grants to use said highway for the purposes of each, subject of course to the right of the public. That each have grants to use the highway is not disputed. These grants are co-ordinate and independent of each other. When the word appellees is used in this opinion with reference to a grant of the right to, use the highway for the construction and maintenance of a power line, the said word appellees shall not be taken to include the appellee The Andrews Asphalt Paving Company. Said company is a construction company merely and not interested in said grant.

The appellant also contends that the high tension wires of the appellees would cause some interference

by induction with its telephone service and that there would also be great danger to the appellant's property or employees by the high voltage transmitted over the appellees' wires. These matters presented questions of fact for the trial court to determine. We would not disturb the finding of the trial court on such matters where such finding is sustained by competent evidence. We have read the evidence and in our opinion the trial court was amply sustained by the evidence. It is true that the evidence shows that there would of necessity be some interference, by induction, yet the further evidence is that such interference, if any can be readily overcome. Under the evidence, that damage if any, is far from irreparable and falls within the category of *damnum absque injuria* and this is particularly true in view of the evidence that the appellees' power line was to be built in accordance with the ordinary and reasonable standards of electrical engineering.

Of course, the right of the parties under their respective grants to use the highway must be exercised in such a way as not to trespass upon or interfere unnecessarily, negligently or maliciously with the rights of others. The appellant argues that since an engineering instruction had been issued stating that R E A had issued an order that future overbuilding in Indiana should cease, that such evidence conclusively shows that such building was impractical and wrong. We have read the evidence on that matter and we think the trial court would be fully warranted in construing such evidence as a desire to avoid the necessary additional cost of overbuilding rather than that it was illegal or wrong. In the examination of the law governing this case we have found among the many opinions and authorities the following to be especially helpful. Opinions of Attorney General of

Indiana 1936, page 160; *Magee v. Overshiner* (1898), 150 Ind. 127, 49 N.E. 951; *Mordhurst v. Ft. Wayne & Southwestern Traction Company* (1904), 163 Ind. 268, 71 N.E. 642; *Coburn v. The New Telephone Company* (1901), 156 Ind. 90, 59 N.E. 324; *McCullough et ux. v. Interstate Power & Light Company* (1931), 163 Wash. 147, 300 Pac. 165; *Citizens Telephone Co. v. Ft. Wayne etc. R. Co.* (1913), 53 Ind. App. 230, 100 N.E. 309; *Lake Shore and Michigan Southern Railway Company v. Chicago Lake Shore & South Bend Railway Company* (1911), 48 Ind. App. 584, 92 N.E. 989, 95 N.E. 596; 62 C.J. §375 p. 300; Elliott, Roads & Streets 4 Ed. p. 576.

We have found no reversible error in the ruling on the motion for a new trial.

Judgment affirmed.