Herbert C. HOLDING, Samual L. Holding, Harold D. Holding and Harry R. Holding, Appellants-Defendants,

v.

INDIANA & MICHIGAN ELECTRIC COMPANY, Appellee-Plaintiff.

No. 2-578A140.

Court of Appeals of Indiana, First District.

Feb. 26, 1980.

---

**4.** A 1979 amendment to Ind.Code 35 48–4–1 is not applicable to the case at bar. For current status, see Ind.Code, 1979 Supplement.

Jack Quirk, Muncie, for appellants-defendants.

Frank E. Gilkison, White, Beasley Gilkison, Retherford & Buckles, Muncie, for appellee-plaintiff.

NEAL, Judge.

Appellants-defendants Herbert C. Holding, Samual L. Holding, Harold D. Holding, and Harry R. Holding appeal from a judgment granting a permanent injunction against them in an action commenced by Indiana & Michigan Electric Company (I & M). Our review discloses no reversible error and we accordingly affirm.

Appellants own land subject to an easement in favor of I & M, which easement is for the purpose of transmitting electric current and includes the right of I & M to maintain poles and cables installed for that purpose. Appellants operate an auto salvage enterprise on the property. I & M has installed 34.5 KV (34,500 volts) cables, supported by wooden poles, over the easement property.

In June of 1975, I & M employees had occasion to measure the distance between the conductor cables and the ground. Measurements were taken at the lowest points of the sag of the cables between each of the poles. The measurements were taken after I & M learned that a dump truck on appellants' land had come into contact with the cable, which contact caused a temporary disruption in the flow of electricity along the power lines. The cable at the point where the truck made contact was found to be 19½ feet above the ground. At the lowest point of the sag, the clearance was found to be approximately 16½ feet.

Portions of the property in question had long been marshy and swamplike. To alleviate this condition, appellants undertook to spread earth fill over portions of the ground surface upon which they stored automobile body hulks. As a result of the addition of the fill dirt, the level of the ground was raised, thereby decreasing the clearance between the ground and the wires.

I & M filed a complaint seeking a preliminary and permanent injunction to require appellants to remove an amount of fill dirt beneath the cables in order that a minimum clearance of 22 feet would be reestablished. Alternatively, I & M sought damages of $4,000, which represented the cost of adding extensions to the poles and restringing the conductor cables and fixtures at a higher level.

Trial on the permanent injunction took place in January, 1978. A permanent injunction was granted.

Appellants present nine alleged errors for consideration by this court. They may be summarized as follows:

I. That the judgment was contrary to the law and the facts.

II. That the court erred in finding:

(a) an encroachment by appellants;

(b) that transmission lines of electrical current constituted a dangerous instrumentality;

(c) that the fill created an increased hazard; and

(d) that specific provisions of the National Electric Safety Code were applicable to the case.

All of the issues are interwoven, so we will discuss them together.

Appellants' argument rests primarily upon the application of certain provisions of the "Safety Rules for the Installation and Maintenance of Electric Supply and Communication Lines" of the National Electric Safety Code. The applicable section thereof, Section 232A, requires certain minimum clearances for power lines based on the type of activity carried on underneath.

Appellants point out that the edition of the Rules in effect in 1975, when the case at bar commenced, contained several categories requiring 22 foot clearance, none of which included the type of activity in which the appellants were engaged. Indeed, at least one category allowed a 17 foot clearance. In 1977, the Rules were amended and a new category, namely, "other land traversed by vehicles such as cultivating, grazing, forest, orchard, etc.," was added. Clearance in this situation was required to be 22 feet. Appellants claim that the clearances prescribed in the 1975 edition are not applicable to them, that the 1977 amendment may not be applied retroactively and, even if it were, it would not be applicable to appellants' property.

In another argument, appellants contend that there was no encroachment on the I & M easement because appellants did not interfere with the transmission of electricity. They further argue that no hazard was presented to the public, since the area is fenced and the public has no access to it.

It is to be noted at the outset that I & M has a valid easement over and across appellants' land for the purpose of the transmission of electricity. I & M is a corporation engaged in the business of generating, transmitting, and delivering electric power, and is, therefore, a "public utility." Ind. Code 8–1–2–1. As such, its activities are governed by the Public Service Commission Act, Ind.Code 8–1–1–1 through 8–1–2–120. The Public Service Commission is empowered to promulgate rules and regulations, Ind.Code 8–1–1–3, and these rules apply to all electrical public utilities subject to the jurisdiction of the Commission. Ind.Admin. Rules & Regs. (8–1–2–4)–A2 (Burns Code Ed.).

■ The construction of overhead and underground lines is regulated by Ind.Admin.Rules & Regs. (8–1–2–4)–A57 (Burns Code Ed.). That rule states in part: "In all cases not covered by specific statutes now in effect, Part 2, 'Safety Rules for the Installation and Maintenance of Electric Supply and Communications Lines,' of the sixth edition of the National Electric Safety Code . . . are prescribed. . . ." Thus, the rules contained in the applicable section

of the National Electric Safety Code are obligatory upon the utility. We consider this to be a code of minimum standards.

■ The law is well settled in the area of the determination of the correlative rights of dominant and servient owners of easements. "In the absence of an agreement to the contrary, the owner of a servient estate may use his property in any manner and for any purpose consistent with the enjoyment of the easement, and the owner of the dominant estate cannot interfere with the use. * * * All rights necessarily incident to the enjoyment of the easement are possessed by the owner of the dominant estate, and it is the duty of the servient owner to permit the dominant owner to enjoy his easement without interference." 11 I.L.E. *Easements* § 31 (1958). The owner of the servient estate may not so use his land as to obstruct the easement or interfere with the enjoyment thereof ·by the owner of the dominant estate. *Ill. Pipe Line Co. v. Ind. St. Rl. Elect. Mb'sp Corp.,* (1940) 107 Ind.App. 372, 24 N.E.2d 805. *See also, Buckeye Pipe Line Company v. Keating,* (7th Cir. 1956) 229 F.2d 795.

■ If, at the time of the grant of an easement, the condition of the place where the right is to be exercised is unfit for the purposes thereof, the grantee may make such alterations as will render the grant effectual, and, after such grant of an easement, it is the right of the owner of the easement to do whatever is reasonably necessary to effect the enjoyment of the easement. *Mercurio v. Hall,* (1924) 81 Ind.App. 554, 144 N.E. 248.

■ The courts in Indiana have long recognized the dangerous propensities inherent in electricity and the means of its transmission. *Ayrshire Coal Co. v. Wilder,* (1920) 75 Ind.App. 137, 129 N.E. 260; *Cole v. American Bridge Co.,* (7th Cir. 1945) 152 F.2d 157. A transformer which carried 6,600-volt current has been characterized under Indiana law as a "dangerous instrumentality." *Echevarria v. U. S. Steel Corp.,* (7th Cir. 1968) 392 F.2d 885. Although Indiana does not adhere to the requirement that electric companies exercise utmost care in their use of high voltage electricity, our courts do hold them to a standard of care commensurate to the risks undertaken. *Petroski v. Northern Indiana Public Service Company,* (1976) Ind.App., 354 N.E.2d 736.

Appellants cite no authority to support their position other than the National Electric Safety Code. We have found no Indiana authority directly in point. Other jurisdictions, however, have addressed themselves to this problem.

In *Carolina Power & Light Co. v. Bowman,* (1949) 229 N.C. 682, 51 S.E.2d 191, the defendant had built a building on the power company easement under the lines. The court ruled that this was unlawful interference with the power company's easement. The court said at 51 S.E.2d 197:

"When the servient owner of land subject to an easement for the construction over and upon it of electric power lines undertakes to erect, and does erect and maintain, a permanent building of the size, height, and dimensions shown by the uncontradicted evidence in this case, to hold the Power Company, the dominant owner, without adequate remedy to prevent this encroachment upon an easement lawfully acquired would seem to us to create an unwise precedent. A high degree of care is required of those who handle and distribute electric current, the degree of care being that commensurate with the dangers reasonably to be apprehended from contact with so powerful and subtle an agency, and *when a right has been conferred therefor. its exercise in the interest of public safety and public service should not be hampered by permitting unreasonable encroachments upon or interference with the means and facilities it may lawfully use. Calhoun v. Nantahala Power & Light Co.,* 216 N.C. 256, 4 S.E.2d 858; *Arrington v. Town of Pinetops,* 197 N.C. 433, 149 S.E. 549; *Helms v. Citizens' Light & Power Co.,* 192 N.C. 784, 136 S.E. 9; *Lawrence v. Yadkin River Power Co.,* 190 N.C. 664, 130 S.E. 735. Upon land now owned by the defendants the right to use a strip 50 feet

wide in the erection, operation and maintenance of plaintiff's electric power transmission lines had been lawfully appropriated for a service to the public. G.S. §§ 56–5, 40–1; *Wissler v. Yadkin River Power Co.,* 158 N.C. 465, 74 S.E. 460. Just compensation for the easement taken according to law was paid. This effected a withdrawal of the private use of this strip by the owner to the extent that such use by him would interfere with the public use. *Hastings Co. v. Southern Natural Gas Corporation,* 45 Ga. App. 774, 166 S.E. 56. And where a right of way or easement which has been acquired by a public service corporation for the purpose of enabling it to perform its duty to the public is invaded or its enjoyment interfered with a remedy by injunction mandatory or prohibitory is available. *Railroad v. Olive,* 142 N.C. 257, 264, 55 S.E. 263." (Emphasis added.)

*See also,* 6 A.L.R.2d 205, A.L.R.2d Later Case Service for Vol. 1–6, page 745, for discussion of this problem.

 We find the reasoning set forth in *Carolina Power & Light Co., supra,* applicable to the facts of this case. Appellants' reliance upon the letter of the rule in the National Electric Safety Code is misplaced. The transmission of electricity is the business of I & M and is the purpose of the easement. High voltage transmission lines have dangerous propensities, and I & M is required under the law and the regulations of the Public Service Commission to exercise a high degree of care in the construction, operation, and maintenance of their transmission lines. The utility may do whatever is reasonably necessary to effect enjoyment of the easement for that purpose.

 It necessarily follows that the exercise of safety practices in the operation of high voltage transmission lines is one of the incidents to the use and enjoyment of the easement. Any activity on the part of the owner of the servient estate which materially renders the operation of the line more dangerous to members of the public who may have occasion to come on to the ease-

ment, or be in the vicinity of the transmission line, is a use inconsistent with the use and enjoyment of the easement by the owner of the dominant estate, and is an encroachment. Whether such encroachment occurs is a matter of fact in any particular case, to be determined by the trier from all of the circumstances. The National Electric Safety Code is not of and to itself determinative, but is only one of the factors to be considered by the court in determining whether such encroachment occurs.

 The conclusion reached by the court on the facts of this case is justified from the evidence. The raising of the ground level by the fill, coupled with the storage of car body hulks upon it, can have no other effect than to create a hazard. We are not unmindful that the catalyst of this case was a contact with the line made by a dump truck.

For the reasons set forth, the cause is affirmed.

Affirmed.

ROBERTSON, P. J., and RATLIFF, J., concur.