The DREES COMPANY, INC. and
Drees Premier Homes, Inc.,
Appellants–Defendants,

v.

Frank and Janet THOMPSON,
Appellees–Plaintiffs,

and

Estridge Development Company,
Inc., Appellee–Intervenor.

No. 29A05–0610–CV–576.

Court of Appeals of Indiana.

June 12, 2007.

As Amended July 18, 2007.

Rehearing Denied Aug. 6, 2007.

Thomas F. Bedsole, Julia Blackwell Gelinas, Maggie L. Smith, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellants.

Judy G. Hester, Richard C. Hersberger, Brazill Hester PC, Indianapolis, IN, Attorneys for Frank and Janet Thompson.

Geoffrey Slaughter, John D. Papageorge, Marci A. Reddick, Sommer Bernard PC, Indianapolis, IN, Attorneys for Estridge Development Co., Inc.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Defendants the Drees Company, Inc. and Drees Premier Homes, Inc. (collectively "Drees") appeal the trial court's grant of a preliminary injunction and later a permanent injunction by a summary judgment ruling in favor of the Appellees–Plaintiffs Frank and Janet Thompson and the Intervenor, the Estridge Development Company, Inc. (collectively "Thompson/Estridge") prohibiting Drees from building the Stafford Lane development as currently planned because it would interfere with the non-exclusive ingress-egress easement rights of Thompson/Estridge. We reverse and remand with instructions.

### Issue

Drees raises five issues on appeal, which we consolidate and restate as:

Whether the trial court erred in denying Drees' motion for summary judgment and granting summary judgment and issuing a permanent injunction in favor of Thompson/Estridge, preventing Drees from building a housing development as planned on twenty-nine acres in Carmel.

### Facts and Procedural History

In 1988 in Carmel, Indiana, Scott and Sarah Bemis ("Bemises") owned a one-acre parcel of land surrounded by twenty-nine acres owned by Larry and Bettye Stafford ("Staffords"). The Bemises could only access 146th Street, a public road, via a private roadway located on the Staffords' property. The Bemises' warranty deed included an ingress/egress easement provision over a portion of the Staffords' property for this purpose. However, this provision did not encompass the entire area that the Bemises used.

In 1988, the Thompsons wanted to buy the Bemis property, but their title insurance company refused to complete the sale until the Staffords executed an express grant of easement for the entire drive used by the Bemises. Accordingly, the Staffords executed the easement grant, providing in part:

WHEREAS, access to the real estate described above as owned by Bemis is by means of a private roadway over the real estate described above as owned by Stafford and an incomplete easement for

said access was included in the deed of conveyance to Bemis . . . ;

WHEREAS, Bemis and Stafford now wish to make said easement more complete.

NOW THEREFORE, in consideration of the sum of $10.00 and other good and valuable consideration paid by Bemis to Stafford, the receipt of which is hereby acknowledged, Stafford hereby grants to Bemis, their successors, assigns, guests, and invitees, a non-exclusive easement for ingress and egress to the real estate described in Exhibit B over the following described real estate:

A strip of ground 50 feet in width, being 25 feet by parallel lines on each side . . . [legal description as originally contained in the Bemis warranty deed]

Also, a strip of ground described as follows:

[legal description of added portion for complete easement]

Additionally, by accepting this grant of easement, Bemis, and their successors and assigns, agree to share equally with Stafford and their successors and assigns all reasonable costs of maintenance and repair of the private roadway located on the above described easement.

Appellants' Appendix at 51–52.

Subsequently, the Thompsons purchased the acre parcel from the Bemises in March of 1988. While the Thompsons and the Staffords were the owners of the two parcels of land, they shared the use of the roadway in the easement as a driveway.

After the Staffords died, the Thompsons entered into a contract with Estridge to sell their property, including the easement, in 2004. The contract included a provision permitting Estridge to extend the closing date for a fee.

In 2005, Drees purchased the Staffords' twenty-nine acres. Drees understood that there was an existing easement on the property. Drees contacted the Thompsons regarding being neighbors, and the Thompsons informed Drees that they could not talk about the possible sale of their home because it was under contract with someone else.

Drees drafted plans to develop the Staffords' twenty-nine acres into a residential development containing fifty homes. The development plans preserve the easement used by the Thompsons. Because the easement is non-exclusive, Drees planned to allow the residents of the development to use the easement roadway as a path for biking and walking. To prevent the Stafford Lane homeowners from driving on the easement, signs would be posted and/or a covenant or restriction would be included in the homeowner contracts. The development plan also includes three city-owned, publicly maintained roads: Beckon Trail, Prevail Drive, and Drees Drive. Two of these roads intersect with the easement roadway.

Drees submitted the development plan to the Carmel Clay Plan Commission for approval. See the diagram of the proposed development below. The blank square indicates the Thompsons' parcel. The easement starts at the top, right-hand corner of the Thompsons' property, extending to 146th Street at the right side of the diagram.

On March 31, 2006, the Thompsons filed a complaint for declaratory judgment and injunctive relief and a motion seeking a preliminary injunction against Drees. Thereafter, Estridge submitted a motion to intervene, which was granted by the trial court, based on their contractual interest in the property at issue in the lawsuit. With the trial court's approval, the Thompsons amended their complaint requesting the trial court to issue an order declaring that the Thompsons have a property right in and to the easement as well as in and to their 146th Street residence, would have their easement rights improperly diminished or terminated by the Drees' development, and would be irreparably harmed by the Drees' development. The Thompsons also requested a preliminary injunction to prevent Drees from working on the development.

In May of 2006, the Carmel Clay Plan Commission approved Drees' submitted plan for the development of the twenty-nine acres as a residential subdivision, Stafford Lane. On July 13, 2006, Drees filed a motion to dismiss the Thompsons' complaint pursuant to Trial Rule 12(B)(1) for lack of subject matter jurisdiction, asserting that the Thompsons failed to exhaust their administrative remedies via the Carmel Plan Commission. Drees also filed a motion for summary judgment and a motion in limine to prevent the admission of extrinsic evidence, arguing that the interpretation of the easement grant should be limited to the language of the grant. The trial court denied Drees' motion to

dismiss and took the motion in limine under advisement.

Two weeks after the preliminary injunction hearing on July 14, 2006, the trial court issued an order denying Drees' motion in limine and granting the Thompsons' motion for a preliminary injunction. The order also required Estridge to post a $750,000 injunction bond.

On August 4, 2006, Estridge filed a motion for summary judgment in which the Thompsons joined. On September 20, 2006, the trial court issued an order delineating its findings of fact, conclusions of law, and judgment, providing as to the judgment:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:
> 70. No genuine issues of material fact exist on Plaintiffs' Motion for Summary Judgment; and as a matter of law, the Thompsons and Estridge are entitled to declaratory relief and summary judgment in their favor pursuant to T.R. 56(A), 56(B), 56(C) and 57.
> 71. Drees' Motion for Summary Judgment is denied.
> 72. In accordance with I.C. 34–14–1–1 *et seq.* and T.R. 57, the Court declares that the Easement does not contemplate that the Plaintiffs would share maintenance and repair costs with fifty (50) families as contemplated by the Stafford Lane development.
> 73. In accordance with I.C.34–14–1–1 *et seq.* and T.R. 57, the Court declares that based on the undisputed evidence

presented to the Court, Drees' Stafford Lane development: (a) places unreasonable burdens on the Plaintiffs' use and enjoyment of the Easement; (b) materially impairs the Thompsons' and their guests and invitees use and enjoyment of the Easement; and (c) unreasonably interferes with the use and enjoyment of the Easement, all of which is contrary to the law. Accordingly, the Court declares that Drees may not use the Easement as set forth in the present Stafford Lane development and is permanently enjoined from doing so.

74. Based on the foregoing facts and law, the Court declares that Drees is permanently enjoined from using the Easement as set forth in the present Stafford Lane development.

75. A final judgment is issued in favor of the Thompsons and Estridge on the Thompsons' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF....

App. at 40–41.

On August 4, 2006, Drees filed a notice of appeal as to the preliminary injunction pursuant to Appellate Rule 14(A). On October 16, 2006, Drees filed a notice of appeal for the summary judgment and permanent injunction order. On November 14, 2006, the two appeals were consolidated and the parties were required to submit consolidated briefs. Additional facts will be provided as needed.

**Discussion and Decision**

Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in the favor of the nonmovant. *MacGill v. Reid*, 850 N.E.2d 926, 928 (Ind.Ct.App.2006). Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.*

*I. Permanent Injunction*

On appeal, Drees argues that the trial court erred in granting the permanent injunction, because Drees can allow others to use the non-exclusive easement, the Thompson/Estridge claim of inconvenience and possible vandalism do not relate to their easement rights, the threat of Nationwide Insurance canceling the Thompsons' homeowners insurance is not relevant to the easement rights conferred, and the purpose and reasons behind the original easement no longer exist. For clarity, we consolidate Drees' arguments to address the gravamen issue of whether the trial court erred in granting the Thompson/Estridge motion for summary judgment and implementing a permanent injunction against Drees.

Easements are limited to the purpose for which they are granted. *North Snow Bay, Inc. v. Hamilton*, 657 N.E.2d 420, 423 (Ind.Ct.App.1995). Generally an easement for ingress and egress, which is at issue in this case, confers only the right to pass over the land and not to control the real estate. *Metcalf v. Houk*, 644 N.E.2d 597, 600 (Ind.Ct.App.1994). In construing an instrument granting an easement, the trial court must ascertain and give effect to the intention of the parties, which is determined by proper construction of the language of the instrument from an examination of all the parts thereof. *Brock v. B & M Moster Farms, Inc.*, 481 N.E.2d 1106, 1108 (Ind.Ct.App. 1985). Where the provision is ambiguous, the court may consider the situation of the property and the parties, and the surrounding circumstances at the time the instrument was executed to determine intent. *Id.*

### A. Is the Grant of Easement Ambiguous

The first hurdle we must pass is determining whether the language of the easement grant is ambiguous. This determination affects whether extrinsic evidence may be used to derive the intent of the parties in creating the easement grant. Thompson/Estridge argued on summary judgment that there is ambiguity in the easement grant language. The trial court agreed, finding the terms "ingress and egress", "private roadway", and "non-exclusive" to be latently ambiguous.

■ To determine whether the easement grant is ambiguous, we must construe the terms of the written contract, a pure question of law. Our standard of review is de novo. *Whitaker v. Brunner,* 814 N.E.2d 288, 293 (Ind.Ct.App.2004), *trans. denied.* A document is found to be ambiguous only when reasonable persons find the contract subject to more than one interpretation. *Adams v. Reinaker,* 808 N.E.2d 192, 196 (Ind.Ct.App.2004). A latent ambiguity arises not on the face of the instrument by virtue of the words used, but may emerge in attempting to apply those words in the manner directed in the instrument. *Id.* Extrinsic evidence is admissible to explain a latent ambiguity.[1] *Id.*

The relevant portion of the grant at issue is as follows:

Stafford hereby grants to Bemis, their successors, assigns, guests, and invitees, a non-exclusive easement for ingress and egress to the real estate described in Exhibit B . . .

App. at 51.

■ Drees asserts that there is no ambiguity in the grant language, while Thompson/Estridge contend there are latent ambiguities arising from attempting to apply the terms "ingress and egress" and "non-exclusive." The cases cited by Thompson/Estridge as to the term "ingress and egress" are distinguishable from the facts at hand, because those cases address ingress and egress easements for lake access. *See Gunderson v. Rondinelli,* 677 N.E.2d 601, 604 (Ind.Ct.App.1997); *Metcalf v. Houk,* 644 N.E.2d 597, 600 (Ind.Ct.App.1994). The *Metcalf* court noted from an earlier case that the grant of ingress and egress to a body of water is normally sought by the grantee for a purpose beyond that of just reaching the water. *Metcalf,* 644 N.E.2d at 600. Such cases typically involve whether the easement holder has the right to construct a pier, store a boat, or park on the easement. *See also Klotz v. Horn,* 558 N.E.2d 1096, 1098 (Ind.1990). Here, the purpose of the easement is solely to allow the Thompsons to reach their land-locked parcel. Hence, there is no ambiguity in applying the terms "ingress and egress."

■ Although not argued by Thompson/Estridge, the trial court also found "private roadway" to be ambiguous without explanation, citing the same set of cases involving lake access easements.

---

1. Last year in interpreting a trust, our Supreme Court held that the distinction between patent and latent ambiguities no longer served any useful purpose and concluded that "where an instrument is ambiguous, relevant extrinsic evidence may be properly considered in resolving the ambiguity." *Univ. of Southern Ind. Foundation v. Baker,* 843 N.E.2d 528, 535 (Ind.2006). Although *Baker* involved the construction of a trust, it would logically follow that the abrogation of the patent/latent distinction would also apply in the construction of easements. However, the present parties argue either that there is latent ambiguity or the complete absence of ambiguity. Therefore, no distinction in the type of ambiguity is requested, and we address the issue in the terms employed by trial court, the parties, and the relevant cited caselaw.

However, these cases do not involve this particular term nor appear to be applicable. Thompson/Estridge argue that their easement rights are for ingress and egress over a private roadway based on the inclusion of shared maintenance of the private roadway on the easement. However, the term "private roadway" is not used in the paragraph actually creating the easement. The statement of the easement right is simply "for ingress and egress . . . over the following described real estate." App. at 51. Rather, the term "private roadway" is used in the preceding paragraph to provide context to the need for the express easement conveyance. Thus, the term "private roadway" is not ambiguous in construing the easement rights conveyed.

■ In support of their argument that the term "non-exclusive" is ambiguous, Thompson/Estridge direct us to *Adams*, where the court found a latent ambiguity in applying the term "non-exclusive" to those other than the original grantor/grantee. 808 N.E.2d at 196–97. Again, the facts of *Adams* can be distinguished from the case at hand. *Adams* involved an easement grant that provided that the easement holder was responsible for all costs related to the maintenance of the easement. *Id.* at 194. The *Adams* Court found the application of the term "non-exclusive" to be latently ambiguous as to whether the parties contemplated that others would use the easement due to Adams being solely responsible for any easement repairs. *Id.* at 196.

This is not the fact before us. The grant of easement denotes that the maintenance cost of the easement is to be shared equally:

> Additionally, by accepting this grant of easement, Bemis, and their successors and assigns, agree to share equally with Stafford and their successors and assigns all reasonable costs of maintenance

and repair of the private roadway located on the above described easement. App. at 52. This language not only contemplates the sharing of this cost by the original grantor and grantee, but also indicates by using "and their successors and assigns" that the cost burden would be born by future and possible multiple owners of the land. The flexible language of "share equally" also allows the repair costs to be shared among multiple successors.

■ As a general rule, a landowner who has granted an easement in his land may grant subsequent easements in the same land, so long as the subsequent easements do not interfere with the prior easement. *Moseley v. Bishop*, 470 N.E.2d 773, 779 (Ind.Ct.App.1984). By using the term "non-exclusive" in the easement grant language, Stafford indicated his desire to reserve this right for himself and his successors and assigns to convey subsequent easements in the same land to others. We conclude that the term "non-exclusive" is not ambiguous.

Based on our foregoing analysis, the grant of easement does not contain any latent ambiguities. Therefore, extrinsic evidence is not needed to construe the document.

### B. Was the Permanent Injunction Appropriate

When interpreting a contract, we must give unambiguous terms their plain and ordinary meaning. *Simon Prop. Group, L.P. v. Mich. Sporting Goods Distribs.*, 837 N.E.2d 1058, 1070 (Ind.Ct.App.2005), *trans. denied.* Using the plain meaning of the language of the easement grant, the parties intended for Stafford to simply grant in Bemis and his successors and assigns the right to come and go over Stafford's land to access the landlocked parcel with the requirement to share equally the cost of maintaining the road-

way. As successors of Bemis, Thompson/Estridge also only have the right to pass over the designated easement to access their landlocked parcel. The question in this appeal is whether Drees' development of the surrounding twenty-nine acres and possible additional use of the easement as a hike/bike trail impairs the ingress/egress easement rights held by Thompson/Estridge to warrant a permanent injunction.

▮▮▮ Permanent injunctions are limited to prohibiting injurious interference with rights. *Ferrell v. Dunescape Beach Club Condos. Phase I, Inc.,* 751 N.E.2d 702, 712 (Ind.Ct.App.2001). The grant or denial of an injunction lies within the sound discretion of the trial court and will not be overturned unless it was arbitrary or amounted to an abuse of discretion. *Id.* A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances, or if it misinterprets the law. *Shipley v. KeyBank Nat. Assn.,* 821 N.E.2d 868, 880 (Ind.Ct.App.2005).

▮▮ The trial court considers four factors in determining the propriety of permanent injunctive relief: (1) whether the plaintiff has succeeded on the merits; (2) whether plaintiff's remedies at law are adequate; (3) whether the threatened injury to the plaintiff outweighs the threatened harm a grant of relief would occasion upon the defendant; and (4) whether the public interest would be disserved by granting relief. *Ferrell,* 751 N.E.2d at 712.

Thompson/Estridge claim that the Stafford Lane development Drees intends to build will create an injurious interference with their easement rights. In determining whether the trial court abused its discretion in granting a permanent injunction against Drees, prohibiting it from building Stafford Lane according to the current plans, we first turn to whether Thompson/Estridge succeeded on the merits. Drees argues that the trial court misapplied the law to the arguments raised by Thompson/Estridge. We review each of Thompson/Estridge's arguments to determine whether the law was properly applied in determining whether the Stafford Lane development would be contrary to the easement rights of Thompson/Estridge.

▮▮▮ An easement is merely the right to use the land of another. *Harlan Bakeries, Inc. v. Muncy,* 835 N.E.2d 1018, 1033 (Ind.Ct.App.2005). As stated earlier, an ingress and egress easement involves the right to pass over a party's land rather than the more extensive right to partially control and alter it. *Metcalf,* 644 N.E.2d at 601. Absent an agreement to the contrary, the owner of the servient estate may use his property in any manner and for any purpose consistent with the enjoyment of the easement. *Bd. of Comm'rs of Vanderburgh County v. Joeckel,* 407 N.E.2d 274, 277 (Ind.Ct.App.1980). The owner of the dominant estate [2] cannot subject the servient estate to extra burdens, any more than the holder of the servient estate can materially impair or unreasonably interfere with the use of the easement. *Brown v. Heidersbach,* 172 Ind.App. 434, 438, 360 N.E.2d 614, 618 (1977).

Thompson/Estridge claim that Drees' current plan to build Stafford Lane will materially impair and unreasonably interfere with their use of the easement. As sources causing this alleged interference, Thompson/Estridge cite that the development and the use of the easement by fifty

---

**2.** The person who owns the land over which the easement runs is the owner of the servient estate, and the person who holds the easement rights is the owner of the dominant estate.

additional families as a hike/bike trail will convert the private roadway into a public road, create public roadways that would cross the private easement, terminate the Thompsons' access to westbound 146th Street, make the easement more dangerous, and create ten residential plots with backyards stretching into the easement. Drees contends that the Stafford Lane development will not interfere with the ability of Thompson/Estridge to pass over the land to access a public road, and that the trial court abused its discretion in imposing a permanent injunction by misapplying the law.

We now review each alleged source of interference, seeking to determine whether the condition materially impairs or unreasonably interferes with the easement right granted: to come and go over the designated strip of land to access the landlocked parcel.

#### 1. Public Roadway

■ As discussed earlier, we concluded that the language in the grant did not provide that the easement would guarantee travel over a private roadway. Thus, the use of the easement by others and public roads crossing the easement do not interfere with the easement rights of Thompson/Estridge, because the grant simply provided the right to come and go over the designated land without more. These conditions would not unreasonably interfere with the easement right granted.

#### 2. East and West Access to 146th Street

■ The next argument made by Thompson/Estridge is that the Stafford Lane development will terminate their access to westbound 146th Street and their ability to access the easement from eastbound 146th Street, because the Hamilton County Highway Department ("Highway Department") would require the closing of a gap in the median on 146th Street in front of the easement. This change would only allow the Thompsons to turn right onto 146th Street. Again, this argument assumes the grant provides for more than just the ability to travel over the land designated. Thompson/Estridge analogize the present case to *Metcalf,* a case involving an easement for the purpose of lake access, arguing that the easement was granted "for particular purposes beyond merely reaching" 146th Street. 644 N.E.2d at 600. However, the analogy does not fit. An easement to the edge of a body of water is usually so that the easement holder can enjoy swimming and other water activities despite having a parcel that does not abut the body of water. In other words, the easement allows the holder to reach their final intended destination, the water. Such is not the case here. The ingress/egress easement is for the purpose of accessing a public road from the landlocked parcel in order to travel elsewhere. The end of the easement at 146th Street here is obviously not the intended destination of the owner of the landlocked parcel.[3] The express language of the grant does not provide any right beyond the easement holder traveling over the designated land. The closing of the gap in the median on 146th Street, a public road, does not impact the ability of Thompson/Estridge to pass over the easement.

#### 3. Development Increases Risk In Use of Easement

■ Next, Thompson/Estridge argue that utilizing the easement as a hike/bike

---

**3.** In line with the interpretation of the grant that 146th Street is not the intended destination of the easement holder, the Thompson/Estridge brief even notes that the Thompsons normally use 146th Street to access their children's school, their church, and stores. See Appellee's Br. at 19. The Thompsons merely use 146th Street as a means to their final destinations.

trail is inconsistent with their enjoyment of the easement and will create safety issues for both them and other easement users. Citing *Holding v. Ind. and Mich. Elec. Co.*, Thompson/Estridge urge us to conclude that if activity by the servient estate owner causes the easement to be more dangerous to the members of the public who use it, the activity is inconsistent with the use and enjoyment of the easement. 400 N.E.2d 1154, 1158 (Ind.App.1980). The full conclusion from *Holding* is as follows:

> The transmission of electricity is the business of I & M and is the purpose of the easement. High voltage transmission lines have dangerous propensities, and *I & M is required under the law and the regulations of the Public Service Commission to exercise a high degree of care in the construction, operation, and maintenance of their transmission lines.* The utility may do whatever is reasonably necessary to effect enjoyment of the easement for that purpose.
>
> It necessarily follows that *the exercise of safety practices* in the operation of high voltage transmission lines is one of the incidents to the use and enjoyment of the easement. Any activity on the part of the owner of the servient estate which materially renders the operation of the line more dangerous to members of the public who may have occasion to come on to the easement, or be in the vicinity of the transmission line, is a use inconsistent with the use and enjoyment of the easement by the owner of the dominant estate, and is an encroachment.

*Id. Holding* can easily be distinguished from the facts at hand. *Holding* involved an easement for the transmission of electricity, which has inherently dangerous propensities. *Id.* at 1157. Thus, under such conditions it would be reasonable to

prevent servient estate owners from taking any action that increases the risk in the dominant estate owner's operation of the inherently dangerous utility. However, this rule should not be stretched so far, as suggested by Thompson/Estridge, as to mean that any action by the servient estate owner that increases to the slightest degree the risk of the use of any easement should be deemed unreasonable interference. Such a broad rule would produce absurd restrictions on a servient estate owner in using his land or granting easement rights to other adjacent landowners.

█ Here, we are discussing a future development of homes, looking at the daily use of the easement roadway as a hike/bike trail and the risks it will pose to one family using the same trail as a means of ingress and egress. The trial court below did not make a finding that the use of the easement as a hike/bike trail would cause safety issues; rather it found that increased traffic on the easement from a number of sources *could* result in safety issues. App. 29 (Safety issues could arise as a result of children on the private roadway.... Safety issues could arise at the proposed intersections). However, the determination of whether the actions of a servient estate owner unreasonably interfere with the easement holder's ingress/egress rights hinges on whether the holder can exercise his right to pass over the designated land, not the varying level of safety of passage. Although they may have to travel at a slower speed on the easement, Thompson/Estridge have not submitted any evidence demonstrating that the hike/bike trail will make the easement roadway impassable or completely impracticable. Thus, the use of the easement as a hike/bike trail does not unreasonably interfere with the ingress/egress easement rights of Thompson/Estridge.

■ Relying upon testimony from the preliminary injunction hearing, the trial court also supported its decision noting that the Highway Department would require an acceleration/deceleration lane for the entrance to Stafford Lane, and that this lane would cause public safety concerns due to crossing in front of the easement roadway. Michael McBride of the Highway Department testified at the preliminary injunction hearing that the easement entrance would be within the beginning of the deceleration lane used for the entrance to Stafford Lane. McBride also testified that currently the visibility to the west when exiting the easement is difficult and that adding the tapered portion of the deceleration lane in front of the easement will further decrease visibility. However, McBride also testified that for the Highway Department to approve the development plans, the easement drive would not have to be closed and that he would not approve a plan as a Highway Department reviewer if he did not think the plan was safe. Thus, a reasonable inference can be drawn that the location of the easement driveway within the deceleration lane is safe based on McBride approving the development plan without requiring the drive to be closed. Therefore, the deceleration lane does not result in a public safety issue or unreasonably interfere with the easement rights of Thompson/Estridge.

### 4. Encroachment of Residential Plots

■ Finally, Thompson/Estridge argue that Stafford Lane would create ten residential plots that would extend onto part of the length of the easement, resulting in encroachment and possible safety issues. Again, their argument fails. Although it may require more cautious driving, having multiple people own the land on which the easement lies does not interfere with one's ability to pass over the driveway within the easement. Encroachment is not an argument here, because, again, Thompson/Estridge do not own the area of the easement to the exclusion of everyone else. They merely have the right to pass over that designated strip of land, owned by another person or other people.

### 5. Homeowners Insurance

■ The trial court also concluded that the termination of Thompsons' current homeowner insurance if the primary plat is implemented results in unreasonable interference with the easement rights. Brian Walter, an underwriter for Nationwide Insurance, testified at the preliminary injunction hearing that due to the increased risk of liability from the Thompsons sharing their driveway with other residents and the addition of public roads crossing the easement roadway, Nationwide Insurance was planning to cancel the Thompsons' homeowner insurance policy. Similar to the other arguments made by Thompson/Estridge, the status of the Thompsons' insurance policy does not inhibit their ability to exercise the easement right of passing over the designated land. Therefore, as with the other alleged sources of unreasonable interference, the potential cancellation of the Thompsons' homeowner insurance policy does not unreasonably interfere with the ability of Thompson/Estridge to pass over the easement. Moreover, the cost associated with maintaining this easement should include insurance, a cost to be equally shared by the numerous landowners.

In conclusion, Thompson/Estridge has not demonstrated that the Stafford Lane development will cause material impairment or unreasonable interference with their ingress/egress easement rights. Thus, Thompson/Estridge have not succeeded on the merits of their claim that the development would diminish or termi-

nate their easement rights and are not entitled to a permanent injunction.

Based on our conclusion, we reverse and remand to the trial court to vacate its original order and enter summary judgment in favor of Drees. Additionally, we must address whether Drees is entitled to damages for being enjoined.

## II. Whether Drees Is Entitled to Injunction Damages

 Drees maintains that the trial court wrongfully issued the preliminary injunction and that it is entitled to damages stemming from the wrongful enjoinder. Under Indiana Trial Rule 65(C), a party may recover fees and expenses incurred as a result of wrongful enjoinder. That rule provides in part:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

The reason for requiring security relates to the expeditious manner in which the preliminary injunctive relief is issued and to the lack of a full hearing upon the facts. *Ind. High School Athletic Ass'n v. Vasario*, 726 N.E.2d 325, 334–35 (Ind.Ct.App. 2000), *trans. denied.*

 The determination of whether an injunction was wrongfully issued hinges on whether injunctive relief was warranted under the facts of the case rather than whether the injunction was ultimately dissolved. *Id.* at 335. In order to obtain a preliminary injunction, Thompson/Estridge were required to show by a preponderance of the evidence that (1) they had a reasonable likelihood of success at trial by establishing a prima facie case; (2) their remedies at law were inadequate, causing irreparable harm pending the resolution of the action; (3) the threatened injury to them outweighs the potential harm to Drees resulting from the grant of an injunction; and (4) the public interest would not be disserved. *Mayer v. BMR Prop., LLC*, 830 N.E.2d 971, 978 (Ind.Ct.App. 2005). If the movant, here Thompson/Estridge, fails to prove one or more of these four factors, the trial court's grant of an injunction is an abuse of discretion. *City of Gary v. Mitchell*, 843 N.E.2d 929, 933 (Ind.Ct.App.2006).

As discussed above, the trial court erred in granting the permanent injunction against Drees, because Thompson/Estridge were not able to succeed on the merits of their claim of unreasonable interference of their ingress/egress rights. The permanent injunction was granted pursuant to a summary judgment motion and was based on the same materials and application of law as used to support the issuance of the preliminary injunction. Therefore, we come to the same conclusion that the preliminary injunction was not warranted, because when the law is applied to the facts, Thompson/Estridge was not able to demonstrate unreasonable interference with their easement rights. Hence, the trial court's decision to grant the preliminary injunction was an abuse of discretion, and the preliminary injunction was wrongly issued against Drees. We accordingly remand to the trial court to determine the costs and damages incurred by Drees due to the injunction.

Reversed and remanded.

SHARPNACK, J., and MAY, J., concur.