

IN THE

# Court of Appeals of Indiana

Anthony J. Giger, et al.,

*Appellants-Plaintiffs*

v.

Joshua L. Hogue,

*Appellee-Defendant*



FILED

Oct 24 2025, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

October 24, 2025

Court of Appeals Case No.
25A-PL-448

Appeal from the Brown Circuit Court

The Honorable Mary Wertz, Judge

Trial Court Cause No.
07C01-2410-PL-423

---

**Opinion by Judge DeBoer**
Chief Judge Altice and Judge Pyle concur.

**DeBoer, Judge.**

## Case Summary

[1] Anthony Giger and his wife (collectively, the Gigers) own property accessible by an easement partially located on Joshua Hogue's land. After Hogue installed five gravel speed bumps to slow down vehicles on the access easement road, the Gigers filed a complaint requesting a permanent injunction that would have required Hogue to "[i]mmediately remove the speed bumps[.]" Appellants' Appendix Vol. 2 at 13. The trial court denied the request, and the Gigers now appeal. We affirm.

## Facts and Procedural History

[2] In 2020, Hogue purchased property in Nineveh where he lives with his wife, their children, and several working dogs. Since 2006, the Gigers have owned an adjacent property they use for hunting and recreation. That property is legally landlocked, meaning it does not have access to a public roadway. The Gigers' deed grants them "[a]n easement for ingress and egress over a [t]wenty [] foot wide easement for roadway and utilities[,]" part of which runs across Hogue's property. Exhibits at 36. Hogue's deed recognizes their "right of ingress and egress" over the easement. *Id*. at 37.

[3] In early 2024, Hogue became concerned about the safety of his children and dogs after he saw contractors who were working at a nearby property driving quickly on the easement road. He spoke with the contractors, asked them to

slow down, and installed a sign stating, "slow down, children and dogs present." Transcript at 54. But when vehicles continued driving in what Hogue considered to be an unsafe manner, he installed five gravel speed bumps on the road.

[4] Giger asked Hogue to remove the speed bumps after the contractors completed their work. When Hogue refused, the Gigers filed a complaint alleging that "[t]he existence of the speed bumps . . . impairs . . . [their] ability to utilize the [e]asement for its intended purpose, which is to provide vehicular access to and from" their property. Appellants' App. Vol. 2 at 13. They requested that the trial court

> issue a permanent injunction against [Hogue] enjoining [him] from interfering with [their] free use and enjoyment of the [e]asement, . . . [and] order [him] to immediately remove the speed bumps and restore the [e]asement area to a condition that it was in prior to the speed bumps being installed, . . . to not place or permit the placement of any structures, objects, or anything within the [e]asement area, and to not perform any construction or other work within the [e]asement area unless agreed to by [the Gigers] or authorized by order of [the] court.

*Id.* at 13-14.

[5] At a bench trial, Giger testified that the speed bumps "cause[] [him] to speed up and slow down" and create a "rough ride" when he drives on the easement road. Tr. at 33, 44. He conceded, however, that they do "not stop [him] from using [the] easement." *Id.* at 44. In his testimony, Hogue admitted that he had

installed the speed bumps with the intent to force traffic to slow down. He offered a picture of one of the speed bumps into evidence, which showed that they were approximately four inches high when he first installed them:



Ex. at 47. He then offered a picture of the speed bumps taken five months after their installation, which showed that they had become worn down and, in his opinion, were "barely" noticeable, Tr. at 57:



Ex. at 48.

[6] During closing arguments, the Gigers asserted that the speed bumps improperly "obstruct and block [their] use of [the] easement." Tr. at 79. Hogue countered that while the speed bumps technically interfere with the use of the easement because they force vehicles to slow down, that interference is not unreasonable because the speed bumps do not prohibit the Gigers from exercising their "very limited right" to use the easement "to access the[ir] property." *Id.* at 80.

[7] Following the hearing, the trial court issued an order denying the Gigers' request for an injunction. In doing so, it issued findings of fact and conclusions of law that provided, in part:

> 9. The hinderance [sic] caused by the speed bumps does not, and has not, unreasonably interfered with the Gigers' right to ingress and egress. The speed bumps do not, and have not, prohibited reasonable passage of a vehicle on the easement. Therefore, the Gigers have not succeeded on the merits of their [request for an injunction].
>
> 10. The Court cautions [Hogue] that had the speed bumps been constructed in a manner that materially impaired or unreasonably interfered with the reasonable passage of a vehicle, its ruling may have been for the [Gigers].

Appellants' App. Vol. 2 at 10. The Gigers now appeal, and Hogue requests an award of appellate attorneys' fees pursuant to Indiana Appellate Rule 66(E).

## Discussion and Decision

## 1. Injunctive Relief.

The Gigers present two issues on appeal, one of which we find dispositive. Specifically, they contend that the trial court misinterpreted the law in concluding that they had to prove that Hogue *unreasonably* interfered with their easement rights because, according to the Gigers, "Indiana law is clear that the owner of property upon which a roadway easement is located . . . may not install obstacles with the intent to hamper the passage of vehicles over the easement[.]" Appellants' Brief at 9. We disagree and find that the court correctly applied the law.

### A. Standard of Review

It is well established that "[t]he grant or denial of an injunction is within the trial court's sound discretion and will only be reversed upon a finding that the court has abused that discretion." *Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 167 (Ind. 1996). A court abuses its discretion if its decision was "clearly against the logic and effect of the facts and circumstances" before it, or if it misinterpreted the law. *Doe 1 v. Boone Cnty. Prosecutor*, 85 N.E.3d 902, 911 (Ind. Ct. App. 2017). Where, as here, the court has entered findings of fact, we apply Indiana Trial Rule 52(A)'s two-tiered standard to determine whether the evidence presented at trial supports the findings and, if so, whether the findings support the judgment. *Garling v. Ind. Dep't of Nat. Res.*, 766 N.E.2d 409, 410 (Ind. Ct. App. 2002), *on reh'g of* 756 N.E.2d 1029 (2001), *trans. denied*.

We will reverse the findings only if they are clearly erroneous. *EdgeRock Dev., LLC v. C.H. Garmong & Son, Inc.*, 261 N.E.3d 192, 202 (Ind. 2025), *reh'g denied*. Because the Gigers appeal from a negative judgment, we will find clear error only if the judgment was contrary to law, meaning "the evidence of record and the reasonable inferences therefrom are without conflict and lead unerringly to a conclusion opposite that reached by the trial court." *In re Est. of Holt*, 870 N.E.2d 511, 514 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*; *see also Burnell v. State*, 56 N.E.3d 1146, 1149-50 (Ind. 2016) ("A judgment entered against a party bearing the burden of proof is a negative judgment."); *McCarty v. Walsko*, 857 N.E.2d 439, 443 (Ind. Ct. App. 2006) ("Whether a party is appealing a negative or adverse judgment determines the clearly erroneous standard that is to be applied."). In applying the negative judgment standard, "we defer substantially to the trial court's findings of fact" and "evaluate questions of law de novo." *Est. of Holt*, 870 N.E.2d at 514.

## B. Permanent Injunction

The purpose of injunctive relief is to "prohibit[] injurious interference with rights." *Drees Co. v. Thompson*, 868 N.E.2d 32, 41 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*. Trial courts consider four factors when determining whether to issue a permanent injunction:

> (1) whether the plaintiff has succeeded on the merits; (2) whether plaintiff's remedies at law are adequate; (3) whether the threatened injury to the plaintiff outweighs the threatened harm a grant of relief would occasion upon the defendant; and (4) whether the public interest would be disserved by granting relief.

*Id.*

As an initial matter, Hogue argues that the Gigers' request should have failed in the first instance because they did not "assert[] a standalone claim to support" an injunction. Appellee's Br. at 12. He contends that to succeed on the merits, the Gigers were required to "assert[] a corresponding declaratory judgment action" asking the trial court to determine the parties' respective rights relating to the easement. *Id.* While we agree that the Gigers' complaint did not expressly request such a declaration, we note that it did allege that they had a right to use the easement "for ingress and egress" and that Hogue's actions had "impaired [their] ability" to do so. Appellants' App. Vol. 2 at 12, 13. To the extent the Gigers were required to seek declaratory relief, we find that these allegations were sufficient to do so under Indiana's notice pleading rules. As our Supreme Court has explained,

> "The purpose of notice pleading is to inform a defendant of a claim's operative facts so the defendant can 'prepare to meet it.'" [*Bayer Corp. v. Leach*, 147 N.E.3d 313, 315 (Ind. 2020)] (quoting *Noblesville Redevelopment Comm'n v. Noblesville Assoc. Ltd. P'ship*, 674 N.E.2d 558, 564 (Ind. 1996)). "A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues." *ARC Constr. Mgmt., LLC v. Zelenak*, 962 N.E.2d 692, 697 (Ind. Ct. App. 2012). Within the context of pleading declaratory judgments, our Court of Appeals' decision in *Myers v. Deets* is instructive. 968 N.E.2d 299 (Ind. Ct. App. 2012). "While not expressly seeking a declaratory judgment," the plaintiff "sufficiently stated facts that would support a declaratory judgment action." *Id.* at 303. The panel found this complaint sufficient to seek relief by way of a declaratory judgment, and the

adequacy of the notice was evinced by the defendant refuting the issue in its answer. *Id.*

*ResCare Health Servs., Inc. v. Ind. Fam. & Soc. Servs. Admin. – Off. of Medicaid Pol'y and Plan.*, 184 N.E.3d 1147, 1153 (Ind. 2022).

[13] Turning to the Gigers' contention on appeal that the trial court committed legal error, they present two supporting arguments, both of which focus on whether the court erred in concluding that they did not succeed on the merits of their claim. First, they assert that Indiana law prohibits Hogue from interfering in any way with the passage of vehicles on the easement, without regard to whether that interference is reasonable. Second, they argue that even if Indiana law permits reasonable interference, the installation of obstacles like the speed bumps at issue here "is[] per se[] unreasonable." Appellants' Br. at 15 (internal emphasis omitted). We disagree with both arguments.

[14] As to the first, we are persuaded by the analysis of another panel of this Court in *Drees Co.* There, the Thompsons owned property in Carmel accessible by an easement road running through an adjacent property. *Drees Co.*, 868 N.E.2d at 35-36. A developer purchased the adjacent property and submitted plans for a development using the roadway as a path for biking and walking. *Id.* at 36. The Thompsons filed a complaint asking for a permanent injunction to prevent the developer from using the road for that purpose, and the trial court granted their request. *Id.* at 37-38. The panel reversed, reasoning:

An easement is merely the right to use the land of another. . . . [A]n ingress and egress easement involves the right to pass over a party's land rather than the more extensive right to partially control and alter it. . . . The owner of the dominant estate[1] cannot subject the servient estate to extra burdens, any more than the holder of the servient estate can *materially impair or* **unreasonably interfere** *with the use of the easement*.

*Id.* at 41 (internal citations omitted) (emphasis added). Under this standard, the Thompsons were not entitled to an injunction because they failed to show that the proposed use of the easement roadway would "cause material impairment or unreasonable interference with their ingress/egress rights." *Id.* at 44.

[15] The Gigers argue the rule expressed in *Drees Co.* is inapplicable here because that case "did not deal with obstacles placed in a roadway easement." Appellants' Reply Br. at 5. Instead, they ask us to apply *Rennaker v. Gleason*, where a different panel of this Court affirmed an "order mandat[ing] the removal of any items that den[ied] or impede[d] . . . access . . . to" an easement road. 913 N.E.2d 723, 733 (Ind. Ct. App. 2009). But in interpreting the scope of that order, the panel noted that the "items to be cleared . . . only include[d] those that prohibit the *reasonable passage* of a vehicle along the easement[]." *Id.* (emphasis added). Indeed, the items placed in the easement there included

---

[1] As the *Drees Co.* court explained, "[t]he person who owns the land over which the easement runs is the owner of the servient estate, and the person who holds the easement rights is the owner of the dominant estate." 868 N.E.2d at 41 n.2.

"telephone poles, boulders, fence posts, and movable piers[,]" all of which, without doubt, unreasonably impeded the passage of vehicles. *Id.*

[16] Thus, we are convinced that under both *Drees Co.* and *Rennaker*, a party seeking an injunction to prevent interference with an access easement must demonstrate that the alleged interference materially impairs or unreasonably interferes with their ability to use the easement for ingress and egress. We therefore reject the Gigers' assertion that "Indiana law does not permit reasonable interference with a roadway easement[.]" Appellants' Br. at 15.

[17] As to the Gigers' second argument that the installation of speed bumps is per se unreasonable, we note that they have not cited—and we have not found—any Indiana authority that has adopted such a rule. We further note that jurisdictions that have considered the issue have consistently declined to hold that speed bumps are unreasonable as a matter of law.

[18] For example, in *Dianne v. Wingate*, the Florida First District Court of Appeal reasoned that "[t]o . . . hold that [] speed bumps are impermissible as a matter of law[] would effectively grant [] easement holders absolute ownership of [] easement property contrary to well-established property law." 84 So.3d 427, 430-31 (Fla. Dist. Ct. App. 2012). Similarly, in *VanCleve v. Sparks*, the Missouri Court of Appeals found that the speed bumps at issue in that case "caused minimal interference" because the party claiming interference "admitted [at trial] that the speed bumps 'just made [them] slow down' and 'didn't keep [them] from going back and forth[.]'" 132 S.W.3d 902, 906 (Mo. Ct. App.

2004); *see also Wilson v. Palmer*, 644 N.Y.S.2d 872, 873 (N.Y. App. Div. 1996) ("We find that the speed bump in question does not substantially interfere with [the] reasonable use and enjoyment of [the] easement."); *Marsh v. Pullen*, 623 P.2d 1078, 1079-80 (Or. Ct. App. 1981) ("We conclude that if limited to a height of seven inches [a speed bump] will not unreasonably interfere with [the] use of [an] easement."), *reconsideration denied*, *review denied*.

[19] We join these jurisdictions in holding that whether speed bumps materially impair or unreasonably interfere with an easement holder's rights is a question of fact, not law. We find this approach congruent with Indiana property law principles, which hold that "[t]he owner of the property over which [an] easement passes[] . . . may use his property in any manner and for any purpose *consistent with the enjoyment of the easement*[.]" *Kwolek v. Swickard*, 944 N.E.2d 564, 571 (Ind. Ct. App. 2011) (quoting *McCauley v. Harris*, 928 N.E.2d 309, 314 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*), *trans. denied* (emphasis added). We agree with the court in *Dianne* that holding speed bumps to be impermissible as a matter of law would turn this principle on its head and "effectively grant [] easement holders absolute ownership of [] easement property[.]" 84 So.3d at 431; *see also Drees Co.*, 868 N.E.2d at 38 (recognizing that "an easement for ingress and egress" does not generally "confer[] [] the right . . . to control the real estate").

[20] Here, the trial court was well within its discretion to conclude, based on the evidence before it, that the speed bumps at issue do not materially impair or

unreasonably interfere with the Gigers' easement rights. Indeed, Giger testified that they do not prevent him from accessing his property or otherwise using the easement for ingress and egress. He further acknowledged that the only effect the speed bumps have on his passage is that they cause him to "speed up and slow down" and create a "rough ride" when he drives on the easement road. Tr. at 33, 44. We agree with the court that these facts are insufficient to prove that the speed bumps "prohibit reasonable passage . . . along the easement[]."[2]

---

[2] Because the owner of a property subject to an access easement may use their property in any way that does not materially impair or unreasonably interfere with the easement holder's rights, we reject the Gigers' argument that Hogue was required to plead as an "affirmative defense" that "reckless driving [] occurring on the easement gave him the right to" construct the speed bumps. Appellants' Br. at 16. A party need only plead an affirmative defense if they intend to present a defense for which they would have the burden of proof at trial. *Cnty. of Lake v. Pahl*, 28 N.E.3d 1092, 1099 (Ind. Ct. App. 2015), *reh'g denied*, *trans. denied*. Here, the Gigers, not Hogue, had the burden to prove that he unreasonably interfered with their easement rights. *Ivankovic v. Ivankovic*, 228 N.E.3d 1143, 1147 (Ind. Ct. App. 2024) (explaining that the party requesting the injunction bears "the burden to demonstrate that certain and irreparable injury [will] result if the injunction [is] denied.").

Accordingly, the Gigers are incorrect in their assertion that Hogue was required to prove that the contractors misused the easement road by driving recklessly, so we need not address their challenge to Finding 11 of the trial court's order which provides, in part, that he "testified that he placed the gravel speed bumps to slow down traffic in response to what he described as reckless driving[.]" Appellants' App. Vol. 2 at 7. We find Hogue's stated reason for installing the speed bumps immaterial to the issue presented to the court, which is whether the speed bumps materially impaired or unreasonably interfered with the Gigers' use the easement for ingress and egress. Even assuming the record evidence does not support the court's conclusion that non-parties had created "a risk of harm to the occupants of the Hogue property[,]" the fact remains that the Gigers did not prove that the speed bumps "materially impaired or unreasonably interfered with the reasonable passage of a vehicle." *Id.* at 9, 10.

Appellants' App. Vol. 2 at 10 (quoting *Rennaker*, 913 N.E.2d at 733). Thus, the court did not err in denying the Gigers' request for injunctive relief.[3]

## 2. Appellate Attorneys' Fees

[21] Hogue asserts that "[t]he Gigers' bad faith appeal is frivolous in its entirety" and asks for an award of appellate attorney's fees under Indiana Appellate Rule 66(E). Appellee's Br. at 25. That rule provides that we "may assess damages if an appeal[] . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Ind. Appellate Rule 66(E). However, it is well-settled that our discretion under this rule is limited

> ["]to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Thacker v. Wentzel,* 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). "[T]he sanction is not imposed to punish mere lack of merit but something more egregious." *Troyer v. Troyer,* 987 N.E.2d 1130, 1148 (Ind. Ct. App. 2013) (citation omitted), [*reh'g denied*,] *trans. denied.* As such, we exercise caution in awarding appellate attorney's fees because of the "potentially chilling effect the award may have upon the exercise of the right to appeal."

---

[3] We are unpersuaded by the Gigers' argument that because the speed bumps partially extended onto an adjacent property owned by a non-party, the trial court "sanctioned an act of trespass by Hogue against the property of [his] neighbor[.]" Appellants' Br. at 14. As an initial matter, because that neighbor did not participate in these proceedings, there was no allegation from him that Hogue did not have permission to install the speed bumps on his property. *See Holland v. Steele*, 961 N.E.2d 516, 525 (Ind. Ct. App. 2012) (an element of trespass is "that the alleged trespasser entered the land *without a legal right to do so*"), *trans. denied*, (emphasis added). In any event, to the extent that Hogue's neighbor might have an actionable trespass claim, the Gigers' interest in the easement does not give them standing to assert it on his behalf. *See Duke Energy of Ind., LLC v. City of Franklin*, 69 N.E.3d 471, 482-83 (Ind. Ct. App. 2016) (quoting *Ind. Mich. Power Co. v. Runge*, 717 N.E.2d 216, 227 (Ind. Ct. App. 1999), *reh'g denied*) ("'[A]n action for trespass to real estate 'cannot be maintained for an invasion of a right of way or easement.'").

> *Holland v. Steele,* 961 N.E.2d 516, 528 (Ind. Ct. App. 2012), *trans. denied.*

*Basic  v. Amouri*, 58 N.E.3d 980, 986 (Ind. Ct. App. 2016), *reh'g denied*.

[22] Bad faith claims are divided into two categories: procedural and substantive. *In re Est. of Carnes*, 866 N.E.2d 260, 267 (Ind. Ct. App. 2007). Procedural bad faith occurs when Appellants "flagrantly disregard[] the form and content requirements of the rules of appellate procedure, omit[] and misstate[] relevant facts appearing in the record, and file[] briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court." *In re Guardianship of A.E.R.*, 184 N.E.3d 629, 641 (Ind. Ct. App. 2022) (quoting *Staff Source, LLC v. Wallace*, 143 N.E.3d 996, 1012 (Ind. Ct. App. 2020)). Appellants commit substantive bad faith when their "contentions and arguments are utterly devoid of all plausibility." *Picket Fence Prop. Co. v. Davis*, 109 N.E.3d 1021, 1033 (Ind. Ct. App. 2018) (quoting *Manous v. Manousogianakis*, 824 N.E.2d 756, 768 (Ind. Ct. App. 2005)), *reh'g denied*, *trans. denied.*

[23] Here, Hogue argues the Gigers committed substantive bad faith by "ignor[ing] controlling precedent and misrepresent[ing] non-controlling opinions[.]" Appellee's Br. at 29. He further asserts that "misrepresentations of law so permeate their Brief [that] there are few (if any) parts that are not impacted." *Id.* at 30. To be sure, for the reasons set forth in Section 1, we agree that the Gigers' arguments on appeal are premised on fundamental misunderstandings

of Indiana law as it relates to easement rights. However, we are not convinced that the Gigers intentionally misrepresented law or fact and find it more likely that they presented arguments to us that are based on a good faith, albeit incorrect, reading of the law.

[24] Nor are we convinced by Hogue's argument that we should view the Gigers' arguments on appeal against the "backdrop" of their supposed misconduct before and during the proceedings below. *Id.* at 27. As the trial court noted,

> [t]here is significant animosity between the parties. Between 2020 and 2022, Hogue used various means to obstruct the Gigers' use of the easement. That conduct was addressed by a lawsuit that concluded with a Mediated Settlement Agreement. Hogue and his wife believe that [] Giger has threatened and attempted to intimidate them.

Appellants' App. Vol. 2 at 7.

[25] Based on the Gigers' alleged misconduct, together with the supposed frivolity of their request for injunctive relief, Hogue asked the trial court to award fees pursuant to Indiana Code section 34-52-1-1(b), which provides, in part, that a "court may award attorney's fees . . . if [it] finds that either party . . . brought the action . . . on a claim . . . that is frivolous, unreasonable, or groundless; [or] . . . litigated the action in bad faith." However, we are mindful of the court's conclusion that Hogue did "not me[e]t his burden to show that the [Gigers] brought the action on a claim that is frivolous, unreasonable, or groundless, or that they litigated the action in bad faith." Appellants' App. Vol. 2 at 10.

While we are not bound by this conclusion for the purposes of assessing fees under Appellate Rule 66(E), we are inclined to agree with it, particularly in light of the guidance from our Supreme Court to "use extreme restraint" in awarding damages on appeal. *Orr v. Turco Mfg. Co.*, 512 N.E.2d 151, 152 (Ind. 1987). Accordingly, Hogue has failed to meet his burden for demonstrating substantive bad faith.

## Conclusion

For these reasons, we conclude that the trial court did not abuse its discretion in denying the Gigers' request for a permanent injunction and accordingly affirm the court's judgment. Furthermore, we deny Hogue's request for appellate attorneys' fees.

Affirmed.

Altice, C.J., and Pyle, J., concur.

ATTORNEY FOR APPELLANTS

Roger A. Young
Young and Young
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Hamish S. Cohen
Jeffrey N. Furminger
Mattingly Burke Cohen & Biederman LLP
Indianapolis, Indiana